FRICK, C. J., and McCARTY, J., concur.

---

## LIEBHART v. LAWRENCE.

No. 2209.   Decided June 6, 1911.   Application for Rehearing, Denied January 13, 1912 (120 Pac. 215).

1. JUDGMENT—EQUITABLE RELIEF—GROUNDS. An action in equity may be maintained to vacate a default judgment, taken on service by publication against plaintiff, quieting title to land purchased at a tax sale, on the ground that the affidavit of publication of summons falsely stated that defendant's residence was unknown; such a proceeding being a direct attack upon the service and judgment.[1]   (Page 250.)

---

[1] Benson v. Anderson, 14 Utah, 334, 47 Pac. 142; Riddle v. Quinn, 32 Utah, 341, 90 Pac. 893.

2. PROCESS—SERVICE—PUBLICATION—SUFFICIENCY OF AFFIDAVIT—
RESIDENCE OF DEFENDANT. Comp. Laws 1907, sec. 2949, provides
that when the person on whom summons is to be served
resides out of the state, or cannot, after due diligence, be found
within the state, and an affidavit stating those facts, and that
he is a necessary party to the action, is filed with the clerk, the
clerk shall cause service of summons to be made by publication.
Section 2950 provides that where the residence of a nonresi-
dent defendant is known the clerk must deposit a copy of the
summons and complaint in the post office, directed to such
person; and section 2952 provides that proof of the service
of summons and complaint by publication shall be by an
affidavit of a deposit of a copy of the summons and complaint
in the post office as prescribed, and the order thereof, by the
person making the same. *Held*, that the affidavit for the ser-
vice by publication should not merely follow the language of
the statute, but should state the probatory facts relied on to
show the ultimate facts recited by the statute; and an affidavit
made for plaintiff, that defendant "resides out of the state of
Utah," and that his "place of residence is to the affiant un-
known," was defective and open to direct attack in an action
to set aside the judgment founded on such service, especially
where plaintiff could have learned of defendant's residence by
reasonable diligence. (Page 251.)

3. PROCESS—SERVICE BY PUBLICATION—AFFIDAVIT. In order to grant
an order for service by publication, and to enable him to account
for failure to mail a copy of the summons and complaint to
defendant, the clerk of the court should be satisfied from the
affidavit that defendant was a nonresident, and that his place
of residence was not known; the clerk acting judicially in
making the order for service of process by publication. (Page.
251.)

4. PROCESS—SERVICE—PUBLICATION—AFFIDAVIT—AFFIDAVIT BY AGENT.
Whatever knowledge or means of knowledge of defendant's resi-
dence plaintiff had must be imputed to his agent, who made
for him an affidavit for an order for service by publication.
(Page 253.)

5. JUDGMENT—DEFAULT JUDGMENT—VACATION—SERVICE OF PROCESS
BY PUBLICATION—EVIDENCE. Slight evidence tending to show
plaintiff's means of knowledge of the residence of a defendant
in another suit is sufficient, in an action to vacate a default
judgment taken upon service by publication, to show that a
statement in the affidavit that defendant's residence was un-
known to plaintiff was false, where defendant in the action
to vacate did not testify as to the extent of his knowledge as to
the residence of the plaintiff therein. (Page 253.)

6. PROCESS—SERVICE—PUBLICATION. One seeking to avail himself of the statutory mode for constructive service must exercise good faith in making his affidavit for publication; a willfully false affidavit being fraudulent. (Page 254.)

7. JUDGMENT—VACATING—EQUITABLE RELIEF. Defendant purchased plaintiff's property at a tax sale, and after plaintiff learned of its sale he corresponded with defendant who stated before a year had expired from the expiration of the sale that he would give plaintiff a quit-claim deed to the land on reasonable terms, thus leading plaintiff to believe that he could recover the property without litigation; but when the year within which defendant could, under the statute, move to set aside the default judgment against him in the tax suit had expired, defendant stated that he would only consider the proposition of conveying to plaintiff as a kindness, and was not bound to do so, and refused to quitclaim, except for a substantial sum. *Held*, that defendant's deceit was sufficient ground in equity for setting aside the default judgment in the suit, and permitting plaintiff to answer to the merits. (Page 255.)

### ON APPLICATION FOR REHEARING.

8. JUDGMENT—DIRECT ATTACK. An action in equity to set aside a default judgment in a tax suit, on the ground of false statements as to defendant's residence in the affidavit for publication, was a direct, and not a collateral, attack on the judgment and service.[2] (Page 256.)

9. PROCESS—SERVICE—PUBLICATION—COLLATERAL ATTACK ON AFFIDAVIT. An affidavit and order for publication will not be inquired into on collateral attack, as it will be presumed that they conform to the law. (Page 256.)

10. PROCESS—SERVICE—DIRECT ATTACK. Service of process may be sufficient to give jurisdiction, and yet may be open to attack in a direct proceeding on other than jurisdictional grounds. (Page 259.)

APPEAL from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by Louis F. Liebhart against Franklin Lawrence.

Judgment dismissing complaint. Plaintiff appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

---

[2] Mosby v. Gisborn, 17 Utah, 257, 54 Pac. 121.

*Rawlins, Ray and Rawlins* for appellant.

*C. S. Patterson* for respondent.

STRAUP, J.

The real estate in question, owned by the plaintiff in 1902, and prior thereto, was sold for taxes for that year. The certificate of sale was assigned to the defendant in 1907, who, in February of that year, obtained a tax deed. On the 4th day of October, 1907, he commenced an action in the district court of Salt Lake County, where the land is, against the plaintiff and others to quiet title. The claimed service of summons on the plaintiff was by publication. On the 28th day of December, 1907, the defendant obtained a judgment against the plaintiff and others by default, quieting the title in him. The plaintiff, on the 12th day of April, 1909, brought this action in equity to set aside the former judgment, to permit him to plead to the merits, to have adjudged the ownership of, and right of possession to, the property, and to have the title thereof quieted in him. This relief was asked on the alleged grounds that the affidavit upon which the order for publication of the summons was based was defective and insufficient; that the averment in the affidavit that plaintiff's "residence was unknown to the affiant" was falsely made; that neither a copy of the summons nor of the complaint was mailed to the plaintiff, and no sufficient reasons appearing why that was not done; that he was without knowledge, and had no notice, of the pendency of the action until long after the entry of the judgment; that, as soon as he learned of it, negotiations were entered into between him and the defendant to set aside the judgment; and upon allegations tendering a meritorious defense. The court found "that the service of the summons in" the former action "was duly and regularly had on" the plaintiff "by publication thereof in accordance with the requirements of law, and that the default and entry of judgment in said action was duly and regularly had;" that the plaintiff, within less than one year after the entry of such judg-

ment, "had due notice and knowledge of the entry of said judgment; and that the said plaintiff herein did not at any time within one year after the entry of the judgment in said entitled cause appear therein and move the court to set aside the default entered against him, and permit him to answer to the merits in said action." Upon these findings, the court dismissed the plaintiff's complaint, and entered a judgment in favor of the defendant, from which the plaintiff has prosecuted this appeal.

The findings are largely in the nature of conclusions. The evidence, however, with respect to them is before us. The plaintiff was a resident of Denver, Colo., and had resided there for about twenty-five years. In 1902, and prior thereto, he was the owner of the property described as "lots 24 and 25, block 2, Denver Place, an addition to Salt Lake City." In that year the property was sold for taxes, the certificate of sale assigned to the defendant in 1907, and a tax deed given to him in February of that year. In deeds of conveyance of the property to plaintiff, made and recorded in 1897 and in 1900, his residence is stated to be in Denver, Colo. The assessment rolls show that the property, in 1901, and to and including 1907, was assessed to plaintiff, "Louis F. Liebhardt, care of Liebhardt Commission company, Denver, Colorado." The plaintiff paid the taxes on the property for the years 1903 to 1908, both inclusive. In October 1907, the defendant brought an action against the plaintiff and others to quiet title, and on the 28th day of December of that year obtained a judgment by default. Service of summons was attempted on plaintiff by publication. Graham Lawrence, a brother of the plaintiff in that action, on the 19th day of October, 1907, made and filed an affidavit therein that: "I am the agent and attorney in fact for the plaintiff, Franklin L. Lawrence; that I am a resident of Salt Lake County, Utah; that the plaintiff is absent from the said state, and that this affidavit is made on his behalf;" that the defendant, the plaintiff in this action, "Louis F. Liebhardt," and others (naming them), "each reside out of the State of Utah; and that the place of residence of each of the said

defendants is to the affiant unknown." The affidavit further recited that the action was brought to quiet the title in the plaintiff in that action (the defendant in this), giving a description of the property, and stating that the defendants named in that action were necessary and proper parties. Upon this affidavit the county clerk made an order, directing a publication of the summons to be made in Truth, a local weekly periodical, the "newspaper" designated as most likely to give notice to the plaintiff and other named defendants in that action. Neither a copy of the summons nor of the complaint was mailed to the plaintiff; nor is it made to appear that any inquiry or investigation was made or any diligence used to ascertain his place of residence. It was assumed and found by the clerk that the place of his residence was unknown, solely upon the averment in the affidavit of Graham Lawrence that plaintiff's place of residence was unknown to him—"to the affiant unknown." For that reason, a copy of the summons and complaint was not mailed to plaintiff, and no effort made to do so.

The plaintiff had no knowledge that the property had been sold for taxes until the 31st day of October, 1908, when the county treasurer of Salt Lake County wrote him, stating that: "We herewith return tax receipt, the property being this year assessed to Franklin Lawrence, who has a tax deed on account of sale for taxes in 1902. He is represented in Salt Lake by Addison Cain, if you wish to communicate with him." The plaintiff thereupon wrote Addison Cain. Graham Lawrence, on December 2, 1908, answered: "Your letter to Mr. Addison Cain forwarded to me today. I have been waiting for my brother (Franklin Lawrence, the defendant) to come in. He is anxious to settle up all these old tax matters; and I expect him in here by the 12th or 15th and will procure you a quitclaim deed as soon as he comes in." On December 24, 1908, Graham Lawrence again wrote plaintiff in response to a letter from him: "Yours of the 21st at hand, and in reply will say that my brother was in day before yesterday. I talked the matter over thoroughly with him. He stated that he got a decree quieting title in

this matter in a suit filed about two years ago." This statement tended to mislead, for the time of the writing of the letter was but four days less than one year from the entry of the decree. The letter proceeds: "He had supposed that you had finally abandoned this property (notwithstanding the plaintiff had paid all of the taxes on the property from 1903 to 1908) and he could get no track of you. However, if you care to make what he would consider a reasonable offer either way for a quitclaim deed, even at this time, he will be willing to do what is right and will pay or accept a fair offer." On February 4, 1909, and after the year had expired in which the plaintiff was permitted by motion to set aside the judgment and plead to the merits, Graham Lawrence again wrote to plaintiff that "there is absolutely no reason why you need be considered except as courtesy. . . . If you care to accept fifty dollars you are welcome to it under all the circumstances, but same is in nowise a necessity," etc. The plaintiff testified that in the first part of November, 1908, he learned that an action had been brought by the defendant to quiet title. He did not then know that a judgment had been taken against him, but immediately made inquiries and began the correspondence referred to. The defendant's judgment was had December 28, 1907.

We have a statute (Comp. Laws 1907, sec. 3005) which provides that:

"When, from any cause, the summons in an action has not been personally served on the defendant, the court may allow, on such terms as may be just, such defendant or his legal representative, at any time within one year after the rendition of any judgment in such action, to answer to the merits of the original action."

This action, brought by the plaintiff, was commenced on the 12th day of April, 1909, about one year and three and one-half months after the defendant had obtained judgment in the former action. The court, finding that the service of summons on the plaintiff "was duly and regularly had" by publication in the former action, that within less than one

year after the entry of such judgment he "had due notice
and knowledge of the entry of said judgment," and that he
did not, within one year "after the entry of the judgment,"
move the court to set aside the default and to permit him
to answer to the merits, dismissed this action, and entered
a judgment for the defendant.

In so disposing of the case, the court must have been of
the opinion that the remedy provided by section 3005 was
exclusive, or that an action in equity is not broader than
the remedy provided in that section, and that it likewise
must be brought within one year after the entry of the judg-
ment.   The court did not find nor state any conclusions
that the plaintiff was guilty of laches.   The court disposed
of the case on the theory that the plaintiff (the defend-
ant in the former action), having been "duly and
regularly" served with summons by publication, and
having had "notice and knowledge" within a year after the
entry of the default judgment, and failing within that time
to appear in that action and move the court to set aside the
default, and to permit him to answer to the merits, could
not thereafter maintain an action in equity to set aside the
default judgment.   In so disposing of the case, the court
took no note of the allegations of the complaint, and made
no findings with respect to the alleged false averment in the
affidavit that the plaintiff's place of residence was unknown;
nor did the court consider or make any findings as to the
making of any inquiry or investigation, or the using of any
diligence by any one, to ascertain his place of residence, nor
of the want of a showing to excuse the failure to mail to
him a copy of the summons and complaint; nor did the court
take note of the negotiations carried on between the parties,
covering a period of about two months before the year had'
expired and about two months thereafter, in which the de-
fendant had promised, before the year had expired, to give
the plaintiff a quitclaim deed on just and reasonable terms.
The action here brought was in the nature of a suit in equity
to set aside a judgment obtained by fraud, and upon the
grounds and for the reasons heretofore stated.   It was a

direct, and not a collateral proceeding. We think under the circumstances disclosed, the action was proper. (*Benson v. Anderson,* 14 Utah, 344, 47 Pac. 142; *Riddle v. Quinn,* 32 Utah, 341, 90 Pac. 893; *Dunlap v. Steere,* 92 Cal. 344, 28 Pac. 563, 16 L. R. A. 361, 27 Am. St. Rep. 143 ;*Parsons v. Weis,* 144 Cal. 410, 77 Pac. 1007; *Estudillo v. Security L. etc., Co.,* 149 Cal. 556, 87 Pac. 19; *State ex rel. Happel v. District Court,* 38 Mont. 166, 99 Pac. 291, 129 Am. St. Rep. 636.)

The next question to be considered is: Were sufficient facts made to appear to require the former judgment to be set aside upon the alleged grounds? We think so. Our statute (section 2949) provides:

"When the person on whom the service of a summons is to be made resides out of the state, or has departed from the state, or cannot, after due diligence, be found within the state, or conceals himself to avoid the service of the summons; or when the defendant is a foreign corporation, having no managing or business agent, cashier, secretary, or other officer within the state, and an affidavit stating any of these facts is filed with the clerk of the court in which the action is brought, and such affidavit also states that a cause of action exists against the defendant in respect to whom the service of the summons is to be made, or that he or it is a necessary or proper party to the action, the clerk of the court in which the action is commenced shall cause the service of the summons to be made by publication thereof."

The section following provides that:

"The order of the clerk must direct the publication to be made . . . in a newspaper designated by him as most likely to give notice to the person to be served. In case of publication, where the residence of a nonresident or absent defendant is known, the clerk must forthwith deposit a copy of the summons and complaint in the postoffice, directed to the person to be served at his place of residence."

Section 2952 provides that the proof of the service of the summons and of the complaint shall be: ". . . 4. In case of publication, the affidavit of the publisher, or printer,

or his foreman or principal clerk, showing the same, and specifying the date of the first and last publications, and the affidavit of a deposit of a copy of the summons and complaint in the postoffice as prescribed by law, and the order therefor, if such deposit shall have been required, by the person making the same."

It will be seen that by this statute the duty is imposed on the clerk to issue the order. In making it, he acts judicially. To grant the order and to account for the want of mailing a copy of the summons and of the complaint, two things were required to be made evident to the clerk; one that the plaintiff was a nonresident, and the other that his place of residence was not known. The affidavit recited that the plaintiff "resides out of the state of Utah," and that his "place of residence is to the affiant unknown," without stating means or opportunity of knowledge concerning the fact deposed, or the inquiry or investigation made, or the diligence used to ascertain his place of residence, or any facts upon which a want of knowledge of the place of his residence was based. Nor is it averred that the plaintiff in the former action (the defendant in this) was ignorant of the plaintiff's place of residence.

Said the court in the case of *Ricketson v. Richardson*, 26 Cal. 149:

"An affidavit which merely repeats the language or substance of the statute is not sufficient. Unavoidably the statute cannot go into details, but is compelled to content itself with a statement of the ultimate facts which must be made to appear, leaving the detail to be supplied by the affidavit from the facts and circumstances of the particular case. Between the statute and the affidavit, there is a relation which is analogous to that existing between a pleading and the evidence which supports it. The ultimate facts of the statute must be proved, so to speak, by the affidavit, by showing the probatory facts upon which each ultimate fact depends. These ultimate facts are conclusions drawn from the existence of other facts, to disclose which is the specific object of the affidavit. To illustrate: It is not sufficient to state generally that after due diligence the defendant cannot be found within the state, or that the plaintiff has a good cause of action against him, or that he is a necessary party; but the acts constituting due diligence, or the facts showing that he is a necessary party, should be stated. To hold that a bald repetition of the statute is suffi-

cient is to strip the court or judge to whom the application is made of all judicial functions, and allow the party himself to deter-. mine in his own way the existence of jurisdictional facts—a practice too dangerous to the rights of defendants to admit of judicial toleration. The ultimate facts stated in the statute are to be found, so to speak, by the court or judge from the probatory facts, stated in the affidavit, before the order for publication can be legally entered."

This case was approved and followed by the same court in the case of *County of Yolo v. Knight,* 70 Cal. 431, 11 Pac. 662. The fact that the statute here requires the clerk and not the judge to make the order can make no difference; for, in granting the order, whether the duty be imposed on the clerk or court, the person or tribunal granting it acts judicially. Of what probative force or evidentiary value is an affidavit of one that the place of residence is unknown to him, who does not purport to have any knowledge of the fact deposed, either from personal knowledge or from inquiry or investigation? We think such an affidavit is defective, and is open to direct attack. (*Bothell v. Hoelhvarth,* 10 S. D. 491, 74 N. W. 231; *Nicoll v. Midland Svgs. L. Co.,* 21 Okla. 591, 96 Pac. 744; *McLaughlin v. McCann,* 123 App. Div. 67, 107 N. Y. Supp. 762; *Thompson v. Circuit Judge,* 54 Mich. 236, 19 N. W. 967; *Mackubin v. Smith,* 5 Minn. 367 (Gil. 296); *Alderson v. Marshall,* 7 Mont. 288, 16 Pac. 576; *Noble v. Aune,* 50 Wash. 73, 96 Pac. 688.)

Furthermore, there is some evidence to support the conclusion that, if the defendant did not have actual knowledge of the place of plaintiff's residence, he had ready and convenient means of knowledge. True the affidavit was made by his brother, his agent and attorney in fact. But whatever knowledge or means of knowledge the defendant, the principal, had, must be imputed to the agent, the affiant, who made the affidavit on behalf of the principal. Notwithstanding the express charge that the averment in the affidavit of want of knowledge of plaintiff's place of residence was falsely made, and some evidence adduced tending to support the charge, nevertheless, neither the defendant nor **4, 5** Graham Lawrence took the witness stand. They both

remained silent, as did Addison Cain, the defendant's representative referred to by the county treasurer. Whether the defendant or the deponent knew or did not know plaintiff's place of residence, and whether the averment in the affidavit that his place of residence was "to the affiant unknown," or to the defendant unknown, was or was not true, were matters peculiarly within their knowledge. When evidence, though slight, as it is, tending to show means of knowledge, sufficient to imply knowledge on their part, is adduced, and they remain mute when they could have taken the witness stand and disclosed what their knowledge in respect to the fact was, the allegation in the complaint that the averment in the affidavit in that particular was falsely made is sufficiently supported. (*Parsons v. Weis, supra.*)

As frequently stated by the courts, a plaintiff who seeks to avail himself of the statutory mode for a constructive service of summons must exercise good faith in his representations to the court or judge. A presentation of a willfully false affidavit, for the purpose of obtaining an order for service of the summons by publication, is itself an act of fraud. (*Dunlap v. Steere, supra.*) The practice in making affidavits for such purpose in the mere language of the statute, and the lack of scrutiny on the part of clerks in issuing orders for publication upon them, and upon a total want of probative or evidentiary facts, and in directing the publication to be made, not as required by the statute, "in a newspaper to be designated by him as most likely," but in some periodical least likely to give notice to the person to be served, is entirely too loose. In the case of *Ricketson v. Richardson, supra,* the court again well said:

"Where this kind of service is sought, the proceedings should be carefully scrutinized, and strict compliance with every condition of the law exacted; otherwise its provisions may lead to gross abuse, and the rights of persons and property made to depend upon the elastic consciences of interested parties, rather than the enlightened judgment of a court or judge."

Regardless of the defective affidavit for the publication of the summons, the plaintiff, under the statute, had one year

from the entry of the judgment against him to appear, have it vacated, and plead to the merits. Because of the negotiations between him and the defendant, and of the statements made by the defendant before the year had expired that, notwithstanding the judgment, he nevertheless would give plaintiff a quitclaim deed on just and reasonable terms, and would "do what is right," the plaintiff was disarmed 7 and lulled into a false security; and then, when the year had expired, the defendant changed his position, and asserted to the plaintiff "there is absolutely no reason why you need be considered, except as courtesy." Such duplicity alone was sufficient to justify a setting aside of the judgment, and to permit the plaintiff to plead to the merits.

The judgment of the court below, therefore, is reversed, and the cause remanded to the trial court, with directions to reinstate the complaint, to annul and set aside the former judgment obtained by the defendant against the plaintiff, quieting the title of the property in the defendant, to permit the plaintiff to plead to the merits, and to hear, determine, and adjudge whether the plaintiff or the defendant is the owner or entitled to the possession of the property, and to quiet the title in him who may be so found and adjudged to be the owner and entitled to the possession. Costs to appellant.

FRICK, C. J., and McCARTY, J., concur.

ON APPLICATION FOR REHEARING.

STRAUP, J.

A petition for a rehearing is filed in which it is urged that we, especially by what is said by us in respect of the affidavit for the publication of the summons, have gone counter to all of the adjudged cases on statutes similar to ours, jeopardized titles, upset a well-established and fixed practice, and created disorder and confusion where before was order and harmony. This on the claim that an affidavit and a service, such as was here made, is not open to a direct attack on the grounds urged against them. That the attack here was direct and not collateral is, in this jurisdiction, not open to question.

(*Mosby v. Gisborn,* 17 Utah, 257, 54 Pac. 121.) That we think is also the weight of authority. (23 Cyc. 1062.) So what we have said on this question is in respect of a direct, and not a collateral, attack. This court has already held that an affidavit and an order for publication **8, 9** of a summons, not being a part of the judgment roll and of the record, will not, on a collateral attack, be inquired into, and that a court, on such an attack, will not look outside the record itself to ascertain whether they were properly made or filed, but will indulge the presumption that they were all that the law requires. (*Amy v. Amy,* 12 Utah, 278, 42 Pac. 1121; *Hoagland v. Hoagland,* 19 Utah, 103, 57 Pac. 20.) From this it would seem that counsel's apprehension of the dire consequences of our decision is groundless, and is based on a misconception of what may be directly and what collaterally attacked.

Counsel strongly urge that, under our statute, to authorize an order or direction of the clerk for a publication of the summons on the ground of nonresidence of a defendant, all that is necessary to state in the affidavit is a statement, in the language of the statute, that the defendant "resides outside of the state," and that such a statement is a statement of an evidentiary and not an ultimate fact nor of a conclusion; that the affidavit here, that "the defendant, Louis F. Liebhardt," and thirteen others (naming them), "each reside out of the State of Utah, and that the place of residence of each of the said defendants is to the affiant unknown," is a statement of such a fact in the language of the statute; and that upon the filing of such an affidavit a mere ministerial, and not a judicial, duty is imposed on the clerk to direct or order a publication of the summons; and that upon such publication the service is complete without a mailing of a copy of the summons and complaint, or any effort made or diligence used to do so. In support of this, the cases of *Calvert v. Calvert,* 15 Colo. 390, 24 Pac. 1043, *Ervin v. Milne,* 17 Mont. 494, 43 Pac. 706, *Schaefer v. Kienzel,* 123 Ill. 430, 15 N. E. 164, *Easton v. Childs,* 67 Minn. 242, 69 N. W. 903, *Hamilton v. Barrick-*

*low,* 96 Ind. 398, *Goore v. Goore,* 24 Wash. 139, 63 Pac. 1092, are cited.

In *Calvert v. Calvert,* the affidavit was as follows: "That defendant is not a resident of Colorado; and that her last-named place of residence was Ann Arbor, Mich." A copy of the summons and complaint, and a copy of the published summons, were mailed to the defendant at Ann Arbor.

In *Ervin v. Milne,* the affidavit was that the summons was delivered to the sheriff of Silver Bow County for service, and that "the sheriff of said county has returned the same to the clerk of this court with his return thereon indorsed to the effect that the said defendant, James R. Milne, could not, after due and diligent search therefor, be found in the county of Silver Bow, Mont.; that the last-known place of residence of said James R. Milne was at No. 407 West Copper Street, Butte City, Silver Bow County, State of Montana, but now said defendant, James R. Milne, has departed from the state, and does not now reside in the State of Montana, but at what particular place deponent does not know, and has not been able, after diligent inquiry, to ascertain."

In *Schaefer v. Kienzel,* the affidavit stated the fact of non-residence of the defendant, and that the affiant was informed and believed she (the defendant) lived "in the City of St. Louis, in the State of Missouri, on 20th street and St. Louis Avenue." A copy of the published notice was mailed to her at that address.

The question here is not so much that the fact of nonresidence of the plaintiff was not stated in the affidavit, but, as indicated in our original opinion, that a copy of the summons and complaint was not mailed to the plaintiff, and no facts or circumstances stated, or found, or made to appear, to excuse such failure. In respect to that question, how unlike are those affidavits to the one in hand, where the bald averment is that "the defendant does not reside in the State of Utah, and that his place of residence is to the affiant unknown." When an everment is made that the defendant is a nonresident, and that he resides at a particular named place in another state, or that his last-known place of residence was

40 Utah—17

at a stated place, an opportunity is afforded for the mailing
of a copy of the summons and complaint to him; or if the
place of residence, as shown in *Ervin v. Milne,* is not ascer-
tainable, and, as was there made to appear by the affidavit, an
excuse for the want or failure of mailing such copy is ac-
counted for.   But neither of these are here shown.   In *Eas-
ton v. Child,* neither the contents nor the substance of the
affidavit is made to appear.   And the question there, in re-
spect of the service, arose over the sheriff's return.   In *Ham-
ilton v. Barricklow,* the defendant there, after the publication
of the summons, appeared in the action and filed a general
denial to the complaint, and a counterclaim.   It would seem
that ought to settle all questions relating to defects in the ser-
vice of summons by publication, or otherwise.

The case of *Goore v. Goore* is to some extent an authority
supporting counsel's contention.   There the affidavit was that
the affiant, plaintiff's attorney, "believes that the defendant·
in said action is not a resident of the State of Washington,
and cannot be found therein, but that his place of residence
is unknown to said plaintiff and this affiant."   That was held
good against a direct attack.   But the sole ground of attack
was want of jurisdiction.   So what was there said by the
court should be restricted to the ground of the attack.   The
court, quoting language of one of its prior decisions, *De
Corvet v. Dolan,* 7 Wash. 365, 35 Pac. 72, 1072, said:

"But the statement that the defendants resided out of the territory
is the statement of a fact, and is all that need be said upon the
subject.   The statute does not make it necessary to show where the
defendants resided.   This is immaterial, so that they were non-
residents."

But that language was first used by that court in a case
of wholly a collateral attack.   Then, when it had a case of a
direct attack, it applied the same language and principle to
a direct as to a collateral attack.   And so does counsel here
for respondent.   No distinction is made of what may be at-
tacked on a direct and what on a collateral proceeding.

· But let it be assumed that the language so used was proper,
as applied to a direct attack for want of jurisdiction, yet we

do not believe it is proper and reflects correct principles when applied to a direct attack upon the grounds here involved. Defects in the service of summons may be assailed in a direct proceeding on grounds other than jurisdiction. That is, the service though defective, may nevertheless be sufficient to confer jurisdiction, and yet may, on a direct proceeding, be successfully assailed on other grounds. We think that is true here. The defect here is one of service. That defect, as already suggested, is not that the fact of nonresidence was not averred, but that a copy of the summons and complaint was not mailed; and that no facts or circumstances are stated, found, or made to appear to excuse such failure. In dealing with that question, we think the place of residence of a nonresident defendant is very material. The law abhors and forbids the taking of property from a person without notice, and without his day in court. To proceed against and deal with a thing within the jurisdiction of the court, and subject to the court's seizure and control, the statute provides for a constructive service on a nonresident by a publication of the summons. But the intent and spirit of the statute, in such case, as well requires a copy of the summons and complaint to be mailed to him, if his place of residence is known. This is a wholesome provision, and is not to be ignored. It ought to be complied with. It is itself a part of the service. This provision of the statute counsel in some statements disregards, and in others asserts, is complied with by the bald averment, "is to the affiant" (here not even to the plaintiff in the action) unknown; and that an implied finding by the clerk, on such an averment alone, that the defendant's place of residence is not known finds ample support, and is sufficient to account for a failure to mail a copy of the summons and complaint.

Upon a presentation of an affidavit for a publication of the summons on the ground of a nonresident defendant, both the plaintiff in the action and the clerk have duties to perform: The plaintiff, by affidavit, to furnish the clerk the evidence in respect of the fact that the defendant is a nonresident; the clerk, upon the evidence so adduced, to determine that the defendant is a nonresident, and to direct or

order a publication of the summons. But there the duties do not end. The statute further requires, that, "where the residence of a nonresident or absent defendant is known," the clerk shall mail him a copy of the summons and complaint. What do the words "is known" mean? Known to whom? Personally known to the clerk? Personally known to the plaintiff, or to the affiant making the affidavit in his behalf? Certainly not. They do and can only mean if the place of residence of the nonresident can, by reasonable diligence or inquiry, be discovered, be ascertained, be found. Who is to make evident the fact of such diligence and inquiry, and the fact of whether the place is or is not known, is or is not as-certained? The plaintiff. Who, upon the evidence so adduced, is to determine whether the place is or is not known, is or is not ascertainable? The clerk. Such is an orderly proceeding, and one which, we think, is necessarily implied by the statute, and which will promote justice. We have, however, been cited to cases where it has been held that if the direction or order for publication of the summons is made by the judge or court the act is judicial; if made by the clerk under a statute, as here, the act is ministerial. This on the theory that clerks generally are unlearned in the law. Said the court, in the case of *Calvert v. Calvert, supra.*

"To require of the clerk such an exercise of judgment, without any knowledge of the law, without any legal attainments upon which he could possibly base a conclusion, would simply be saying to the clerk that he should judicially determine that question."

Thus the question whether an act is judicial or ministerial is made to depend upon the legal learning of the officer or tribunal exercising the function. If he possesses such knowledge, the act is judicial; if he does not, the act is ministerial. The same kind of a reason is also given in the case of *Ervin v. Milne.* We think the determinative feature of whether a particular act or function of an officer or tribunal is ministerial, or judicial, or *quasi* judicial is more largely dependent upon the character of the act or function to be performed than upon the kind or amount of learning of the

officer or tribunal performing the act. To hold the act here purely ministerial is to hold that a plaintiff in an action, or an affiant in his behalf, may himself, in effect, direct the publication of the summons and control the mailing of the copy of the summons and complaint—a holding which may often lead "to gross abuse, and the rights of persons and property made to depend upon the elastic consciences of interested parties." We do not think the Legislature contemplated the conferring of such a power upon an interested litigant.

Counsel also complains of our decision, on the ground that we have unsettled an established and prevailing practice of the district courts. It is said many default judgments in divorce proceedings, in proceedings by attachment, and in proceedings to quiet title have been rendered on a service by publication, founded upon an affidavit similar to that in hand. If so, it is about time to stop such a practice. Nonresidents, as well as residents, have the right to acquire and hold property in this State. In the absence of proof of actual service, proceedings affecting their property require careful scrutiny; and the court, before entering a judgment taking it from them and giving it to another, should see to it that not only one, but that every requirement of the statute providing for a constructive service has, both in letter and spirit been strictly complied with. The spirit and intent of the statute is to give the nonresident notice of the proceedings against or affecting his property, if that can be done. For that purpose is the provision of the statute requiring a copy of the summons and complaint to be mailed to him, if his place of residence is known, if, as heretofore shown, his place of residence can be ascertained or discovered by reasonable diligence and inquiry. Here comes a litigant into court by a proceeding affecting the property of a nonresident who for many years had the record title, except as his rights thereto may have been divested by the tax sale, and seeks to take it from him, and to claim it for himself. He causes an affidavit to be filed by an agent that the nonresident "resides out of the State of

Utah, and that his place of residence is to the affiant unknown," without even stating that the place of such residence is unknown to the litigant. The clerk manifests no concern about it, and on the affidavit alone directs and causes the summons to be published, not in a "newspaper designated as most likely to give notice to the person to be served," but in a weekly periodical least likely to give such notice. There the matter rests, awaiting the time to take the default. No effort and no inquiry is made to ascertain or to discover the place of plaintiff's residence. The fact of the place of residence was regarded as wholly immaterial, and that all that was necessary to know was that the plaintiff was a nonresident. Hence no copy of the summons and complaint was mailed to him, and no effort made to do so, Upon such a service, plaintiff's property is taken from him, and is given to the defendant. We do not think such a service, as against a direct attack, is good, when it is made to appear, as here, that the defendant's knowledge (the plaintiff's in the former action) of the place of residence of the nonresident was not negatived, and where, as here, he had ready and convenient means of knowledge of such fact; and that upon reasonable diligence and inquiry such place could readily have been discovered and ascertained, and a copy of the summons and complaint mailed. Upon the evidence, we do not say that the conduct of the defendant was such as to prevent notice to the plaintiff of the prior proceeding. But his conduct is more in harmony with that theory than with that of reasonable efforts to give plaintiff such notice.

The petition is denied.

FRICK, C. J., and McCARTY, J., concur.