## PARKER v. ROSS et al.

No. 7401. Decided April 19, 1950. (217 P. 2d 373.)

Rehearing Denied August 2, 1950.

See 49 C. J. S., Judgments, sec. 266. Constructive service for in rem actions, see note, 126 A. L. R. 664. See, also, 42 Am. Jur. 74.

*Milton V. Backman,* Salt Lake City, *Backman, Backman & Clark,* Salt Lake City, for appellant.

*Romney & Boyer,* Salt Lake City, *H. R. Boyer,* Salt Lake City, for respondents.

WADE, Justice.

Mary Parker as administratrix of the Estate of Katie C. Johnson, deceased, brought this suit to set aside a judgment quieting title to certain real property formerly owned by decedent in an action brought by *S. R. Ross* v. *Katie C. Johnson* and unknown defendants. She appeals from a judgment dismissing her complaint with prejudice and upon the merits. The appeal is upon the judgment roll.

The judgment of dismissal was entered after appellant declined to plead further upon the court's sustaining a general demurrer, portions of a special demurrer and a motion to strike her second amended complaint.

The complaint alleged in substance that the property affected by this action was owned by Katie C. Johnson

when it was sold for general property taxes for the year 1924 and that an Auditor's deed was issued thereon in 1929. That thereafter Salt Lake County issued a quitclaim deed covering said property to Alton F. Lund who conveyed the property to respondents Ross in 1946. That S. R. Ross filed a suit to quiet title to this property in the District Court of Salt Lake County, naming Katie C. Johnson et al. as defendants. That S. R. Ross procured a judgment by default in that action in June, 1946.

The complaint further alleged that Katie C. Johnson had died at Deer Lodge, Montana, during the month of August, 1919, leaving as her only heir-at-law, Alice Larson, known as Mrs. R. E. Larson, who resided in Butte, Montana, at the time Ross commenced the suit to quiet title, and that the affiant in the affidavit for publication of summons upon which the order for publication of summons was issued knew or by using due diligence should have known that Katie C. Johnson was deceased and because there had been a failure of due diligence to ascertain that fact, the publication of summons was invalid.

Appellant attached a copy of the affidavit for publication of summons upon which the publication was predicated in the suit to quiet title. This affidavit shows that affiant who was the attorney for respondent, S. R. Ross, in that action, in endeavoring to ascertain the whereabouts of Katie C. Johnson had issued a summons upon which the sheriff of Salt Lake County, Utah, made a return that after due diligence and inquiry that Katie C. Johnson could not be found by him in the State of Utah. That affiant also searched the records of the County Recorder pertaining to the property involved and found that Katie C. Johnson's address was listed as Butte, Montana; that a search of the old tax rolls in the County Treasurer's office revealed one street address of Katie C. Johnson, c/o James Sennett, 1547 Harrison Street, Butte, Montana, and another street address of Katie C. Johnson, c/o Mr. R. E. Larson, 702a West Park, Butte, Montana, and that affiant then caused

letters to be addressed to Katie C. Johnson at these two addresses in Butte, Montana, and also to General Delivery, Butte, Montana, but received no reply to any of these. That the records in the office of Tax Adjuster for Salt Lake County showed the same addresses as given above. That a search of the records of the County Clerk of Salt Lake County, including the judgment and probate indexes as well as other records, a search of the records of the Assessor and of the City Treasurer of Salt Lake County and of the city directories of Salt Lake City, Utah, for many years past and of the telephone directory for Salt Lake City and vicinity did not reveal the present whereabouts of Katie C. Johnson.

Appellant also alleged in the complaint that an agent of appellant in using due diligence to determine the whereabouts of Katie C. Johnson made inquiry of the city police department of Butte, Montana, and the State Board of Health at Helena, Montana, at which latter place the agent determined the date and place of death of Katie C. Johnson and that the records from which this determination was made are public records. It is also alleged that no letters were sent by respondent to James Sennett or Mr. R. E. Larson, persons in whose care respondent had ascertained letters could be sent to Katie C. Johnson. The complaint then alleges that the defendants in the suit to quiet title had a meritorious defense to that action.

It is appellant's contention that the court erred in sustaining the general and special demurrers and the motion to strike because at the time the action to quiet title was commenced Katie C. Johnson was deceased and the affidavit upon which service by publication was predicated shows that due diligence was not exercised by the plaintiff in that action to locate said Katie C. Johnson, that due diligence within the contemplation of the statute required that plaintiff should have done what appellant's agent herein did, which would have notified said plaintiff that Katie C. Johnson was deceased.

In determining whether due diligence was used by plaintiff in the action to quiet title to ascertain the whereabouts of the defendants therein, it must be kept in mind that the suit was not only brought against Katie C. Johnson, the person who appeared of record to be the owner of the property involved therein, but also against all unknown persons claiming an interest in the property. Sec. 104-57-10, U. C. A. 1943, provides that:

"Actions to determine adverse claims to real property may include as defendants therein, in addition to such persons as appear of record to have * * * some claim on the lands described in the complaint adverse to plaintiff's ownership, or other persons unknown claiming any right or interest in or lien on such lands, or which is a cloud upon the title of plaintiff thereto; and the plaintiff may describe such unknown defendants in the complaint as 'all other persons unknown, claiming any right, title, estate or interest in, or lien upon the real property described in the complaint adverse to the plaintiff's ownership, or clouding plaintiff's title thereto.' * * *"

Section 104-57-11, U. C. A. 1943, provides that:

"Service of summons upon all the unknown defendants mentioned in the preceding section shall be made by publication in the manner provided for the publication of summons in other civil actions. * * *"

The real question to be determined is whether service was effective as against the unknown defendants.

The term "all other persons unknown", etc., as used in the statute and used in describing and designating unknown defendants in plaintiff's complaint, necessarily includes the representatives, unknown heirs and devisees of any person named as a defendant who is not known by plaintiff to be dead. Unless a person named as defendant is known to be deceased, the plaintiff might not know nor even be able to ascertain the heirs or devisees of such named defendant. The designation of unknown defendants in this case in the language employed in the statute, was sufficient to include the heirs at law of Katie C. Johnson, if plaintiff was not aware of her demise.

## Section 104-5-12, U. C. A. 1943, provides that:

"Where the person upon whom service is to be made resides outside of the state * * * or where in an action in rem some or all of the defendants are unknown, and any of such facts appear by affidavit of the plaintiff or his agent to the satisfaction of the court or a judge thereof, or of the clerk, and where it also appears by such affidavit or by the verified complaint on file that a cause of action exists against the defendant in respect to whom the service is to be made or that he is a necessary or proper party to the action, the court or judge, or the clerk may make an order that the service of summons be made by publication. * * *"

## Section 104-5-13, U. C. A. 1943, provides:

"The order must direct the publication to be made five times, once in each week for five successive weeks in a newspaper having general circulation, published in the county in which the action is brought, * * *. In case of publication where the residence of a nonresident or absent defendant is known, the clerk must forthwith deposit a copy of the summons and complaint in the post office, postage prepaid, directed to the person to be served at his place of residence. * * *"

In this case, plaintiff administratrix does not allege in either her original complaint or in her amended complaints, nor otherwise contend, that an order for publication of summons was not made and entered upon filing the affidavit for publication of summons in the form and manner required by statute, nor that publication was not made for the requisite period of time, nor that copies of the complaint together with copies of summons describing the property were not mailed by the clerk of the court forthwith, addressed to said Katie C. Johnson at the places stated in the affidavit for publication as the last known addresses of such person. This case is therefore unlike *Park* v. *Higbee,* 6 Utah 414, 24 P. 524, wherein this court held that the trial court obtained no jurisdiction of the person of defendant in a partition suit and had no authority to proceed in rem by publication of summons where the order for publication did not direct that a copy of the complaint with copy of summons be mailed forthwith to defendant,

and such order did not provide the length of time for publication.

Appellant's attack on the decree quieting title is predicated on the theory that the court had no authority to order publication of summons as to Katie C. Johnson for the reason that she was dead at the time action was commenced; and that the affidavit for publication was deficient by reason of failure of plaintiff to show due diligence to locate Katie C. Johnson or to ascertain whether she was deceased. Appellant contends that locating an address of a nonresident and merely attempting to correspond with such nonresident without success, does not constitute due diligence; that investigation must go further, and be conducted outside the state where such person was once known to reside, to determine whether such nonresident is still living; and that in this case such investigation would have disclosed that Katie C. Johnson died long prior to commencement of the action, and also the name and residence of her heir at law.

The affidavit for publication of summons assailed by appellant, recites that plaintiff had issued a summons which the sheriff of Salt Lake County had been unable to serve because Katie C. Johnson could not be found in the state of Utah; that thereafter affiant searched the records of the county recorder and those of the county treasurer, from which affiant discovered two addresses indicating that some years ago said Katie C. Johnson resided at Butte, Montana, which was the last known address; that affiant addressed letters to Katie C. Johnson at said two addresses and also one to her in care of General Delivery, Butte, Montana; that no reply to any of these letters was ever received. Affiant also searched the records of the county clerk of Salt Lake County including probate indexes, to obtain information as to the whereabouts of said Katie C. Johnson or whether she was dead, but affiant found nothing concerning said person in said

records nor in the records of the City Treasurer or in the telephone and city directories.

Such a search was sufficient to show due diligence on the part of plaintiff to ascertain whether Katie C. Johnson resided within the state at the time of the commencement of the action. See *Rue* v. *Quinn*, 137 Cal. 651, 66 P. 216, 70 P. 732, which appears to be the leading case in California as to what is a sufficient showing of "due diligence" in attempting to ascertain the whereabouts of a defendant within the state, for the purpose of obtaining service by publication under statutes similar to ours. In that case the affidavit by the attorney for the plaintiff in the suit to quiet title showed that a summons had been returned unserved by the sheriff because defendants could not be found, and that inquiries from prominent County Officers and other persons who could be expected to know defendant's whereabouts failed to disclose the desired address. The California Supreme Court in holding that facts averred in the affidavit were sufficient to sustain the order for publication of summons, said, on page 217 of 66 P.:

"* * * When service is to be made in this mode [by publication of summons] upon the ground that the defendant cannot, after due diligence, be found within the state, the affidavit must show two facts, viz. the exercise of due diligence to find the defendant within the state, and a failure to find him after the exercise of such diligence. * * * In making the order for the service by publication, the judge acts judicially upon the evidence which the Code requires to be presented to him for that purpose, and can act upon no other evidence than such as is prescribed by the Code. If the facts set forth in the affidavit have a legal tendency to show the exercise of diligence on the behalf of the plaintiff in seeking to find the defendant within the state, and that, after the exercise of such diligence, he cannot be found, the decision of the judge that the affidavit shows the same to his satisfaction is to be regarded with the same effect as is his decision upon any other matter of fact submitted to his judicial determination. * * *"

The respondent in the instant case having shown by his affidavit for publication facts sufficient to find that he had used due diligence to ascertain whether defendant was

within the state and not being able to find her there and also having caused mail to be sent to her outside of the state to addresses it was reasonable to believe would reach her and having received no reply, did all that was necessary to try to find the whereabouts of the record owner of the land to which he sought to quiet title. Our statutes do not require either in spirit or intent that more be done than respondent did in the present case to try to give actual notice to the record owner of the pending suit. Here, one of the letters sent had been addressed in care of the son-in-law of the record owner. It can be reasonably assumed that the son-in-law was aware of the death of the addressee and his wife being her heir if sufficiently interested could have so advised the writer. But, even if this were not the fact, still, respondent had fulfilled the requirements of the statute as to the record owner. Having by due diligence been unable to find the record owner within the state, and not knowing, but it being reasonable to assume that there might be other claimants not of record, respondent had averred in his affidavit that he had named as parties defendant

"all other persons claiming any right, title, estate or interest in or lien upon the real property described in the complaint adverse to the plaintiff's ownership or clouding plaintiff's title thereto"

and that it was necessary to publish summons to obtain service on these unknown defendants, and that they are necessary parties to the action because of their claims upon the real property, the title to which plaintiff was seeking to quiet, and that these unknown defendants could not after due diligence be found within the state.

There is no allegation that in the quiet title action, plaintiff or counsel for plaintiff actually knew that Katie C. Johnson was deceased. Consequently, if plaintiff and counsel for plaintiff in such action were still unaware of the death of the named defendant after due and diligent inquiry and efforts to contact her, the un-

known defendants would include the heir or heirs at law. Ordinarily, it is not possible to ascertain the names and identity of heirs and devisees until the death of a person. The affidavit for publication, showing that Katie C. Johnson had not communicated with plaintiff in response to letters of inquiry sent to her last known address, and that no other information regarding her had been obtained after the described searches, warranted the designation of "all other persons unknown", etc., as defendants, since plaintiff could not be certain whether the named person was still living, nor whether third parties might claim some rights which did not appear of record.

While the judgment quieting title was ineffective as against Katie C. Johnson by reason of her death prior to commencement of the action, the service by publication was effective against her unknown heirs and all other unknown defendants, since it is not disputed that the clerk mailed copies of complaint and of summons describing the property to the named defendant at her last known addresses. Possibly, the heir at law obtained actual notice of such suit by the mailing of said copies of complaint and of summons. The second amended complaint does not allege facts which would permit a court to find that the affidavit for publication was either fraudulent or sham or misleading; nor that the affidavit was insufficient by reason of failure of plaintiff to engage someone to conduct an investigation at Butte, Montana. Cf. *Liebhart* v. *Lawrence*, 40 Utah 243, 120 P. 215.

The judgment of dismissal is affirmed. Costs to respondents.

PRATT, C. J., and LATIMER and McDONOUGH, JJ., concur.

WOLFE, Justice (concurring specially).

I am extending my concurrence into a brief discussion of "due diligence" required by a plaintiff in ascertaining

the necessary facts to be used as a basis for an application for the publication of summons. I do this not only to indulge in an older lawyer's luxury of giving advice to younger members of the bar, but because in cases involving summons by publication, I am not so much interested in what, under the facts of each may be reasonable diligence, which, of course, is the specific question in each such case, but rather in a pronouncement of some guiding principles for determining due diligence.

The exercise of judgment in the matter of whether an affidavit for the publication of summons shows due and and reasonable diligence is one of the really important functions which a judge exercises. And he should be firm in rejecting an affidavit which is doubtful. It is difficult judging from my experience for a judge in chambers when a matter is presented ex parte not to succumb to the entreaties of ingratiating counsel. On it may depend whether defendants have their day in court on their property rights. By the same token the sufficiency of the affidavit which is the basis of the action by the judge (and throughout the opinion when I use the word "judge" I include "clerk"[1] and "court" because all three words are used in Section 104-5-12, U. C. A. 1943) is of great importance. The diligence to be pursued and shown by the affidavit is that which is reasonable under the circumstances and not all possible diligence which may be conceived. Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address or the fact of death of the person on whom service is sought. There have been cases where the plaintiff in an action to quiet title or in a divorce action was not untruthful in setting down details in the affidavit to show diligence; yet like a person who bustles with activity but accomplishes little, makes an imposing recital of non-

---

[1]Personally, I think this judicial function far too important to be left to a layman who lacks not only judicial experience but is untutored in the law.

productive diligence. Such type of "diligence" when probed may reveal a design to draw attention away from the fact that a further pursuit might result in an unwelcome disclosure of the actual address of the defendant. Due diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so. If the end sought is the address of an out-of-state defendant it encompasses those steps most likely, under the circumstances, to accomplish that result.

Many times the value of the property involved is small but the work involved in an honest attempt to discover the address of the defendant, if living, or if dead, the names of the heirs, is considerable, and from a monetary standpoint the effort cannot be rewarded by the compensation it deserves because the traffic will not bear the charge conscientious service deserves. Such conscientious service partly unrewarded is one of the services the legal profession must contribute. When the property is valuable and clearing the title is a prerequisite to its mortgagability or construction of valuable buildings there is usually more money to pay for the search. There is a bedrock of reasonable diligence under the circumstances of any case which must be reached but in cases where the property involved is quite valuable, the plaintiff will want to make efforts well beyond the bare minimum required to obtain the judicial approval of the affidavit of due diligence. The test in any case is not utter diligence but reasonable or due diligence for no one should take the risk of a bare minimum because it would not be known what the bare minimum would be which would satisfy the judge. For the judge himself would not only want to satisfy himself but be satisfied that this court on appeal would conclude that he had shown proper judgment, and if the case never reached this court, it would be somewhat embarrassing if after publication had been ordered and judgment on constructive service rendered, the owner should appear and show that he had

received no notice of the action but that his address could have easily been ascertained had a trifle of ingenuity been exercised as a part of diligence. So much by way of introduction.

Section 104-5-12, U. C. A. 1943, encompasses five classes of defendants on which service of summons may in proper types of actions be made by publication. (1) Persons who reside out of the state; (2) Persons who have departed from the state; (3) Persons who conceal themselves to avoid service of summons; (4) Persons who cannot after due diligence be found in the state; and (5) In actions in rem where the person or persons are unknown.

The class of "persons who cannot after due diligence be found in the state" excludes those whom it is definitely known reside out of the state, that is, class (1), and those whom it is definitely known reside in the state but have departed therefrom whether temporarily, permanently or semi-permanently, i. e. class (2). It includes those whose whereabouts are uncertain except that they cannot be found in the state. The first part of diligence then would be to determine that the defendant cannot be found in the state and the show of diligence should recite steps taken to ascertain that fact with at least a near certainty. But reducing the fact that the defendant cannot be found in the state to a near certainty does not complete the requirements. Section 104-5-13, U. C. A. 1943, provides that

"where the residence [of the defendant] is known, the clerk must forthwith deposit a copy of the summons and complaint in the post office, postage prepaid, directed to a person to be served *at his place of residence.*"

This section contemplates not only reaching a state of near certainty of not knowing the residence of an out of state defendant, but of pursuing diligence further in an effort to ascertain the residence. This necessarily includes ascertaining whether he resides anywhere, that is, whether he is alive or dead. And the trail may start by first ascertaining

whether the defendant resides in the state and if so, when he departed, i. e. first reducing it to a class (2) case and proceeding from that point of vantage. In fact, a diligent search to determine these facts may result in reducing the affidavit to a statement under oath of the ultimate fact of the actual present residence of the defendant as out of the state, giving the out of state address. Thus the problem would be reduced to a class (1) case with address ascertained. In such case it would seem unnecessary to recite the steps which had been taken to ascertain the out of state address unless it were to demonstrate that such fact was reliable. And if the search yielded the actual address of the defendant he could be personally served and thus if such were chosen rather than publication, the affidavit, order, publication and mailing could all be dispensed with. *Ricks* v. *Wade, Judge,* 97 Utah 402, 93 P. 2d 479. Only in the case where search has not yielded the present address or whereabouts of the defendant or the fact of whether the party is alive or dead, or if dead, the names of his heirs, would it then seem necessary to set out steps taken to show the diligence used. The ultimate desideratum is to find a present address so that the clerk may send a copy of the summons and complaint to the defendant and thus reduce to at least a near certainty that he may receive timely notice of the suit. The affidavit of facts which is to reveal the diligence employed, on which the judge must act according to Section 104-5-12, U. C. A. 1943, should therefore show not only due diligence as to the ascertainment of the fact that the defendant on which summons is to be served is absent from the state, but as to the attempt made to find out his present address which would usually also result in ascertaining the fact of whether he was alive or dead.

Ordinarily, no definite steps or acts can be set down as necessary to be included in the affidavit.

A review court may not lay down rules as to the amount of diligence required in any case except that it may be said

that mere conclusions without showing what was done to reach such conclusion is not sufficient and also that mere perfunctory acts to support the conclusion of due diligence are not sufficient. Common sense under the circumstances and a regard for the rights of the defendant should largely govern. The golden rule may also serve as a guide. The admonition should be: Exercise the same diligence to find the defendant as you expect him to if he were the plaintiff and you the defendant.

In actions to quiet title based on tax sales where the record owner has been in default for a long time and there is, as in this case, no record that he has manifested any interest in the property, it would seem that the plaintiff might meet the requirement of due diligence by the steps taken in this case. If the tax records of the period up to the time an auditor's deed was issued, or a fortiori of the records up to the time the county quit-claimed the property, showed an address of the purported or erstwhile payer of taxes to which address tax notices had been sent in envelopes with an outside return address, and the notices had not been returned marked undelivered, or if the records in the County Recorder's office showed an address of the supposed owner or interested party, this would be an indication that such interested or erstwhile interested party, still lived at that address, and if the plaintiff then sent a letter to such address and it was never returned by the post office serving that address, it would be some indication that the party still lived there but was uninterested in the property. While I think it would be well for the plaintiff to check on failure to receive a reply or notice of non-delivery by writing to the chief of police, sheriff or postmaster of the community, if permitted to give out information, serving that address specially if it were a small town or country community, and if a larger town or city possessing a city directory, to consult such directory either directly or through correspondence with a Chamber of Commerce or appropriate public official, I am not pre-

pared to hold that failure to show such latter steps in the affidavit of diligence would require the judge passing on the same to disapprove the application for publication.

But it should be noted that evidence of a tax debtor's apparent disinterest in his property by failing to respond to a tax obligation is only an element and perhaps not a very reliable one at that. Take for example, the cases where a geological probability of discovering oil or minerals arouses a new and keen interest in previously neglected property. In the scramble to procure tax titles and follow with quiet title suits, plaintiffs have been known not to be anxious to give the supposedly indifferent owner the opportunity he should have to pull back his property with the slender string by which he holds it. But that string cannot be cut except by summons supported by a showing of due diligence.

The statute leaves to the judge who must act on the affidavit the matter of determining whether he is satisfied with the diligence shown but it is like many other matters of discretion not an uncontrolled decision. Important rights are to be decided in the suit. It is important that the defendant have a chance to defend; hence it is important that he be served and for that reason that reasonably diligent efforts be made to locate him so that he may be served.

If the judge found to his satisfaction that a named defendant was absent from the state merely on the showing that the sheriff of the county wherein the plaintiff resided had made a return that after due diligence and inquiry the defendant could not by said sheriff be found in the state without reciting the diligence used, it would not in law be sufficient. *Liebhart* v. *Lawrence*, 40 Utah 243, 120 P. 215. Nor do I think it would be sufficient if the showing was that the plaintiff consulted the city directory or telephone directory where there was no showing that the defendant ever lived in the city, or if he lived therein, as to the period of his residence. Absence from the state is a negative fact and proof of it presupposes diligence in show-

ing either that (1) the party never resided in the state, or that if he did, he had departed; and (2) if he never lived here, or had lived here and departed, where his residence really is at the time service of summons is to be had on him.

The judge passing on the affidavit should read the recital of the steps taken to locate known or unknown defendants and in the light of those recitals determine by his imagination applied to the known facts what other steps might in addition reasonably have been taken to still further pursue the hunt, and then determine from the comparison with all steps which might have been taken, whether under the circumstances of the situation the plaintiff had reached the point of reasonable diligence. For it must be realized that this is the type of case, like many other situations in the law, where a proper compromise point must be reached. On the one side is the interest or possible interest of the defendant and the necessity to endeavor to give him his day in court to preserve such interest. On the other side is the realization that property must be dealt with either by taxation authorities or in the channels of trade or as social assets. Property cannot be insulated from the exigencies of human progress or human society. It does not exist in vacuo or in isolation, nor is it to be statically frozen. And there is a point at which a reasonable mind would conclude that profitable results would only remotely be a possibility or that any further pursuit would be impracticable or unreasonable.

In view of the difficulty in finding the compromise point, I would think it well for the plaintiff, if he is confronted with a doubt as to whether he has used reasonable diligence to go the "second mile" in tracing the whereabouts of defendants or determine whether they are with the quick or the dead, rather than to resolve the doubt by not going far enough, for in this type of case not only must the trial judge pass on the affidavit, but this court must be able to say that there was no failure or abuse in the discretion

of the trial judge. When discretion is to be exercised at the very threshhold of the case on the important question of whether enough diligence is shown to permit service by publication rather than personal service out of the state, it is well to err on the side of too much than on the side of too little.

Above, I have attempted to enunciate a policy which should guide one whose duty it is to exercise due diligence in cases involving summons by publication and have suggested some concrete steps in the quest to find the address of an out-of-state defendant or to determine whether living or not. But each case must stand on its own facts and on the circumstances involved in the situation at the time service by publication is sought. I concur because in this case I cannot say that the finding by the trial judge that the plaintiff in the action to quiet title had shown in his affidavit for publication reasonable diligence was unreasonable.