Toshiko Sasai MORI, Plaintiff
and Appellee,

v.

Gordon Wayne MORI, Defendant
and Appellant.

No. 940251–CA.

Court of Appeals of Utah.

June 1, 1995.

Brent D. Young (argued), Ivie & Young, Provo, for appellant.

Brian C. Harrison (argued), Hill, Harrison, Johnson & Schmutz, Provo, for appellee.

Before DAVIS, BENCH and JACKSON, JJ.

## OPINION

BENCH, Judge:

Appellant filed this interlocutory appeal challenging the trial court's assertion of jurisdiction over him in Appellee's attempt to "register" a Japanese divorce decree in Utah. We remand the case for further proceedings.

## FACTS

Appellant was born and raised in Utah. He and Appellee met and courted while both attended Brigham Young University in Provo. The parties were married in West Jordan in 1983. For a few days after the marriage, the parties stayed in Utah with Appellant's parents. The parties then departed for New York, where Appellant attended graduate school. After Appellant obtained his graduate degree, the couple moved to Japan on a work assignment. The parties' only child was born in 1986.

On May 25, 1987, the parties were divorced by order of the Tokyo Family Court. The Tokyo decree provided for property distribution, support, and custody of the couple's child as follows:

a) Custody of the child to Appellee with visitation provision for Appellant and his parents;

b) Appellant to pay Appellee $20,000 at the time of the divorce and another $10,000 by January 1989;

c) Appellant to pay child support of $800 per month and cover medical and accident insurance for the child;

d) Appellant to purchase a house at 1698 North 80 West, Orem, Utah.

Pursuant to the Tokyo divorce decree, Appellant purchased the house in Orem. Appellee and the child moved into the Orem house. Appellant moved from Tokyo, Japan, to London, England, but has made mortgage and child support payments from a Utah bank account.

In 1991, Appellee filed a complaint in Utah seeking "registration" of the Tokyo Family Court's decree. Appellant made a special appearance to challenge jurisdiction, to quash service of process, to oppose enlargement of time for service of process, and to strike an affidavit supporting service of process by alternative means. The trial court denied Appellant's challenge to jurisdiction and accepted Appellee's alternate service of process. Appellant again made a special appearance to challenge the trial court's jurisdiction to adopt the Tokyo divorce decree. The trial court again denied Appellant's jurisdictional challenge. This court granted Appellant permission to pursue an interlocutory appeal.

## ANALYSIS

### Service of Process

■ Appellant argues that the court erred in allowing alternative service of process and enlargement of time for service. Appellee had difficulty serving Appellant and moved the court to enlarge time for service and to allow for service on Appellant's secretary, receptionist, or wife. The motion was accompanied by an affidavit of Appellee's counsel. The trial court permitted Appellee to enlarge time and to effectuate service on Appellant by alternative means. Appellant claims that the "necessary foundation was not established to permit alternative service of process or enlargement of time for service of process."

Pursuant to Rule 4 of the Utah Rules of Civil Procedure, trial courts have discretion to determine the type of process to be served upon parties "provided that the means of notice employed shall be reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action to the extent reasonably possible or practicable." Utah R.Civ.P. 4(g). The record shows that previous efforts to serve process on Appellant had been unsuccessful. Therefore, pursuant to Rule 4(g), the court properly allowed Appellee to personally serve Appellant's secretary, receptionist, or wife. Support for the trial court's order is found in the affidavit that accompanied the motion and in counsel's amended supplemental affidavit. The supplemental affidavit showed proof of attempted service in Claremont, California, receipts of registered mail to London, England, and signed affidavits of service. The court permitted Appellee to file

the supplemental affidavit pursuant to Rule 4(i), which states:

> At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

Utah R.Civ.P. 4(i). Under the circumstances of this case, the court did not abuse its discretion in allowing Appellee's counsel to amend and supplement his affidavit to support service of process by alternative methods.

### Personal Jurisdiction

■ The trial court determined that it had general jurisdiction over Appellant. It is undisputed that Appellant has not resided in Utah since 1983. The contacts that Appellant has had with Utah since he left the state have not been "substantial and continuous." *Arguello v. Industrial Woodworking Mach. Co.,* 838 P.2d 1120, 1122 (Utah 1992). Thus, Utah courts cannot assert general jurisdiction over Appellant.

■ The trial court also determined that it had specific jurisdiction over Appellant. The circumstances under which Utah courts can assert specific jurisdiction were recently explained in *Radcliffe v. Akhavan,* 875 P.2d 608, 611–12 (Utah App.1994). This court stated that

> "[t]o determine whether Utah courts can exercise personal jurisdiction over nonresidents, a two-part test must be met. First, the claim against the nonresident defendant must arise from the activities enumerated in the Utah long-arm statute." *Anderson v. American Soc'y of Plastic Surgeons,* 807 P.2d 825, 827 (Utah 1990). Second, the defendant's contacts with Utah

must be sufficient to allow jurisdiction to be exercised without violating the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Id.* at 828.[1]

*Id.* at 611; *accord Rocky Mountain Claim Staking v. Frandsen,* 884 P.2d 1299, 1301 (Utah App.1994).

The first part of the *Radcliffe* test requires that the claim arise from activities enumerated in the Utah long-arm statute. Our long-arm statute specifically provides for divorce and support claims against nonresidents.

> Any person ... who in person or through an agent does any of the following enumerated acts, submits himself ... to the jurisdiction of the courts of this state as to any claim arising from:
>
> . . . .
>
> (6) with respect to actions of divorce, separate maintenance, or child support, [i] having resided, in the marital relationship, within this state notwithstanding subsequent departure from the state; *or* [ii] the commission in this state of the act giving rise to the claim, so long as that act is not a mere omission, failure to act or occurrence over which the defendant had no control[.]

Utah Code Ann. § 78–27–24(6) (Supp.1994) (emphasis added).[2] One basis for subsection (6) jurisdiction is that the couple must have resided in Utah at some time during the marriage. Although the parties stayed in Utah with Appellant's parents for a few days after their marriage, they have never "resided" here during the marital relationship. *See, e.g., Haddow v. Haddow,* 707 P.2d 669, 672 (Utah 1985); *Knuteson v. Knuteson,* 619 P.2d 1387, 1389 (Utah 1980).

Appellant would be subject to personal jurisdiction under the other basis for subsection (6) jurisdiction if Appellant committed in

---

**1.** Regarding the second part of the *Radcliffe* test, due process requires that assertion of personal jurisdiction over Appellant not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted). Based on the quantity and quality of Appellant's contacts with Utah, Appellant has "purposefully established minimum contacts within Utah ... such that ... [Appellant]

could reasonably anticipate being haled into court here." *Radcliffe,* 875 P.2d at 612.

**2.** The trial court noted several other provisions of the Utah long-arm statute under which it could assert personal jurisdiction. Because subsection (6) relates specifically to divorce and support claims, we limit the analysis in this case to that provision.

Utah "the act giving rise to the claim." Appellee, however, has not framed her complaint to state that Appellant committed an act in Utah, which act gave rise to her claim. Her complaint asked only that the trial court "register" the Tokyo divorce decree.

### Registration

Appellee based her complaint on Utah Code Ann. § 78–22a–2 (1992), which is part of the Utah Foreign Judgment Act. Under that Act, " 'foreign judgment' means any judgment, decree, or order of a court of the United States or of any other court whose acts are entitled to full faith and credit in this state." Utah Code Ann. § 78–22a–1 (1992). By its own terms, the Utah Foreign Judgment Act applies only to foreign judgments of courts that are subject to the Full Faith and Credit Clause of the United States Constitution. Those courts include all jurisdictions of the states, territories, and possessions of the United States. *See generally Medina & Medina, Inc. v. Gurrentz Int'l Corp.*, 304 Pa.Super. 76, 450 A.2d 108 (1982) (according full faith and credit to Puerto Rican judgment, despite fact that Puerto Rico is not a state).

As used in section 78–22a–2, the term "foreign judgments" does not include judgments from foreign countries. *See Multibanco Comermex, S.A. v. Gonzalez*, 129 Ariz. 321, 321, 630 P.2d 1053, 1053 (Ct.App.1981) (holding that judgments from a foreign country cannot be registered in a domestic court); *Zalduendo v. Zalduendo*, 45 Ill.App.3d 849, 4 Ill.Dec. 450, 360 N.E.2d 386 (Ill.1979) (holding that Illinois Uniform Enforcement of Foreign Judgments Act precludes registration of foreign country divorce decrees); *Medical Arts Building, Ltd. v. Eralp*, 290 N.W.2d 241, 246 (N.D.1980) (holding that "judgments of foreign countries are not included in Ch. 28–20.1, NDCC," which language parallels Utah's Foreign Judgment Act). Utah courts cannot therefore "register" the Tokyo Family Court's decree pursuant to the Utah Foreign Judgment Act.

Before enactment of the Foreign Judgment Act, "the traditional method of enforcing a foreign judgment was to file an action on the judgment in a Utah court" in a civil action to enforce the judgment. *Pan Energy v. Martin*, 813 P.2d 1142, 1143 (Utah 1991). In *Pan Energy*, the supreme court declared that the traditional method of enforcing a foreign decree is still available. *Id.* Without a specific treaty provision, judgments of foreign countries can only be enforced under the principle of comity. *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). "Comity is the principle that a court, for consideration of public policy, should defer to a court of another jurisdiction ... that calls for the exercise of judicial discretion." *Pan Energy*, 813 P.2d at 1146. Thus, actions asking Utah courts to enforce foreign country judgments are enforceable in Utah under principles of comity.

Appellee, as we previously noted, has not asked the trial court to enforce the judgment of the Tokyo Family Court. Instead, Appellee asked only "that the [Tokyo Family Court's] Divorce Decree be registered" in the trial court. Inasmuch as that is not possible, Appellee's complaint currently does not state a claim for which Utah courts can grant relief.[3]

### CONCLUSION

We conclude that the trial court did not abuse its discretion in allowing alternative service of process on Appellant. We also conclude that Utah could exercise specific personal jurisdiction over Appellant if there were a claim that arises from the activities enumerated in the long-arm statute. We remand the case to the trial court for further proceedings consistent with this opinion.

DAVIS, Associate P.J., and JACKSON, J., concur.

---

**3.** "[I]t is incumbent upon this Court to take cognizance, sua sponte, of controversies which are based upon the failure to state a claim for which relief may be granted." *Estes v. Talbot*, 597 P.2d 1324, 1326 (Utah 1979). "It simply is not compatible with the rule of law that a legal proceeding may be maintained without an allegation of a cause of action that is cognizable at law." *Id.*