**BONNEVILLE BILLING, Plaintiff and Appellee,**

v.

**Rick WHATLEY and Maryam Whatley, Defendants and Appellant.**

No. 970148–CA.

Court of Appeals of Utah.

Dec. 4, 1997.

Craig S. Cook, Salt Lake City, for Appellant.

Wilford N. Hansen Jr., Salt Lake City, for Plaintiff and Appellee.

Before DAVIS, P.J., and BILLINGS and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Rick Whatley, asserting the trial court lacked personal jurisdiction for deficient service of process, appeals the trial court's denial of his motion to set aside a default judgment under Rule 60(b)(5) of the Utah Rules of Civil Procedure. We reverse.

## BACKGROUND

In August of 1990, Whatley's wife executed two agreements with two separate physicians to pay for medical services. In the agreements she listed her husband as the person responsible for the account and gave his business address as 50 West Broadway, Salt Lake City, Utah. After she incurred charges for medical services, the medical providers assigned their collections to Bonneville Billing & Collections, Inc. (Bonneville).

Bonneville, through its attorney Steven Kaufman, filed a complaint against Whatley and his wife for $3,500 plus attorney fees. However, Bonneville was unable to serve Whatley. On the summons, the constable

who attempted to serve Whatley crossed out the business address, "50 West Broadway, [Salt Lake City,] UT," which was designated on the summons, and noted "Not here. They believe he works out of Long Beach, Calif. office." The constable's return stated:

I hereby certify and return that I received the within and hereto annexed, summons and complaint on the 18 day of February, 1992, and after due search and diligent inquiry, I am unable to find the within named defendant, Whatley, Rick, at 50 West Broadway—not here, in Salt Lake County, State of Utah and I am reliably informed and do verily believe that said defendant is unable to be located at the above stated address.

On April 13, 1992, Bonneville filed a motion for alternative service by mailing to which it attached an order, a mailing certificate, and a copy of the summons, but not the return of summons. Bonneville also submitted Kaufman's affidavit, which averred:

STEVEN M. KAUFMAN, ESQ., being first duly sworn upon oath, deposes and says[:]

1. He is the attorney for the plaintiff in the above entitled action, and has personal knowledge of the facts set forth in this affidavit.

2. That the plaintiff has attempted to send mail to the defendant at his/her last known residence address of [P.O.] Box 1182, Salt Lake City, UT 84110–1182 and same has been returned with the notation that the defendant has moved and has left no forwarding address. Plaintiff is unaware of the defendant's current address.

3. The defendant is employed at Kemper Financial, and plaintiff has attempted to serve the defendant at his place of employment; however, the personnel at Kemper Financial would not allow the defendant to be personally served there.

4. Plaintiff believes that mailing the Summons and Complaint to the defendant in care of his place of employment is more likely to give the defendant notice of this lawsuit than publication in a local newspaper, and plaintiff requests that the Court order that service be effected upon the defendant by the Clerk of the Court mailing a copy of the Summons and Complaint to the defendant in care of his employment, Kemper Financial and that service shall be complete 30 days after mailing.

Based upon the affidavit and the record before it at that time, the trial court granted the motion for alternative service and ordered that the service be mailed to Whatley at the Salt Lake City address where the constable had attempted to serve Whatley previously, and that thirty days after mailing, service would be deemed complete. The clerk certified that she mailed the service on April 30, 1992.

Whatley did not enter an appearance during the time period specified by the trial court. Consequently, on June 11, 1992, the trial court entered a default judgment. Notice of judgment was filed on June 25, 1992 and was sent by mail to Whatley's residential address listed in the affidavit. In 1995, various writs of garnishment were issued against Whatley. While trying to buy a home in June of 1995, Whatley became aware of the judgment against him.

On November 6, 1995, Whatley made a special appearance and moved under Rule 60(b)(5) of the Utah Rules of Civil Procedure to quash service and set aside the default judgment, arguing that the judgment was void. Whatley contended that the trial court lacked personal jurisdiction because Whatley had never been properly served and that the underlying affidavit supporting alternative service was misleading or false and did not show that Kaufman had exercised due diligence. Whatley filed an affidavit stating that the Kaufman affidavit was inaccurate in many respects: (1) Whatley had left his employment at the Salt Lake City office of Kemper Financial (Kemper) in 1990; (2) Whatley had been working for Prudential Securities in Seal Beach, California until June 1992; and (3) Whatley had never been served with process either personally or by mail.[1] He further stated that he became

---

1. A supplemental affidavit entered by Whatley clarifies Whatley's location at the relevant times.

He moved from Utah in April of 1990. He was employed by Prudential Securities in Los Ange-

aware of the judgment against him only when he was trying to buy a home in June of 1995. On June 5, 1996, a different judge denied Whatley's motion stating "that service by mail was as likely to apprise Defendant of the pending action as any other form of service. Defendant did not submit any address other than Kemper ... on the [medical payment form]."

On June 10, 1996, Whatley moved to alter or amend the judgment under Rule 59 of the Utah Rules of Civil Procedure arguing that the evidence as presented was insufficient to justify the trial court's decision. On November 8, 1996, the trial court denied that motion. Whatley appeals the June 5, 1996 order.

## ISSUE

■ The sole issue before us is whether the trial court correctly denied Whatley's Rule 60(b)(5)[2] motion to vacate the default judgment by holding that the trial court properly granted alternative service based upon the affidavit and record before it.

## STANDARD OF REVIEW

■ Because Rule 4 governs service of process, *see* Utah R. Civ. P. 4, and because whether service of process was proper is a jurisdictional issue, *see Garcia v. Garcia,* 712 P.2d 288, 290 n. 4 (Utah 1986) (per curiam) ("The requirements of Rule 4 relating to service of process are jurisdictional."), the standard of review is a correction-of-error standard:

A denial of a motion to vacate a judgment under rule 60(b) is ordinarily reversed only for an abuse of discretion. However, when a motion to vacate a judgment is based on a claim of lack of jurisdiction, the district court has no discretion: if jurisdiction is lacking, the judgment cannot stand without

denying due process to the one against whom it runs. Therefore, the propriety of the jurisdictional determination, and hence the decision not to vacate, becomes a question of law upon which we do not defer to the district court.

*State Dep't of Soc. Servs. v. Vijil,* 784 P.2d 1130, 1132 (Utah 1989) (citations omitted); *cf. Workman v. Nagle Constr., Inc.,* 802 P.2d 749, 754 n. 11 (Utah.Ct.App.1990) ("Generally, the district court has some discretion in ruling on a rule 60(b) motion. However, if the judgment is determined to be void, the court has no discretion, and the judgment must be set aside.").

Bonneville however claims that the standard of review is an abuse of discretion standard enunciated in *Mori v. Mori,* 896 P.2d 1237 (Utah.Ct.App.1995), *rev'd on other grounds,* 931 P.2d 854 (Utah 1997). In that case, we stated:

Pursuant to Rule 4 of the Utah Rules of Civil Procedure, trial courts have discretion to determine the type of process to be served upon parties "provided that the means of notice employed shall be reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action to the extent reasonably possible or practicable."

*Id.* at 1238 (citation omitted); *cf. Downey State Bank v. Major–Blakeney Corp.,* 545 P.2d 507, 510 (Utah 1976) (applying abuse of discretion standard for refusal to set aside judgment for defective service).

■ At first blush, *Mori* may appear inconsistent with the standard enunciated in *Vijil.* We note however that *Mori* involved a different question. The primary issue in *Mori* was whether the trial court had abused its discretion in allowing the plaintiff to *amend* and *supplement* her affidavit underly-

les, California, and also "engaged in services with Kemper" at the same time.

2. Although a motion might have been brought under Utah Rules of Civil Procedure 60(b)(3) and (4), which arguably could have been time-barred by the rule, *see* Utah R. Civ. P. 60(b) ("The motion shall be made within a reasonable time and for reasons (1), (2), (3), or (4), not more than 3 months after the judgment, order, or proceed-

ing was entered or taken."), we note that (1) Whatley's motion was brought under Rule 60(b)(5) so that the three-month limitation does not specifically apply to his motion, and (2) that "where the judgment is void because of a fatally defective service of process, the time limitations of Rule 60(b) have no application." *Garcia v. Garcia,* 712 P.2d 288, 290 (Utah 1986) (per curiam).

ing the motion for alternative service of process. *See Mori*, 896 P.2d at 1238–39. We held that under Rule 4(i) of the Utah Rules of Civil Procedure the trial court had discretion to permit the supplementation and amendment. *See id.* at 1239; *see also* Utah R. Civ. P. 4(i) ("At any time *in its discretion* . . . the court may allow any process or proof of service thereof to be amended. . . ." (Emphasis added.)). Because the amended and supplemented affidavit showed that the plaintiff met the foundational requirements for alternative service, we concluded that the trial court did not abuse its discretion in ordering the *type* of service that it ordered. *See Mori*, 896 P.2d at 1238–39. In doing so, we stated that "trial courts have discretion to determine the *type* of process to be served upon parties 'provided that the means of notice employed shall be reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action to the extent reasonably possible or practicable.'" *Id.* at 1238 (quoting Utah R. Civ. P. 4(g)) (emphasis added). Thus, the language in *Mori* states only that once a trial court has determined that a method of alternative service has met the constitutional requirement to confer personal jurisdiction on the court, i.e., is reasonably calculated to apprise interested parties of the action to the extent reasonably possible or practicable, the court has discretion to order that *type* of service if it orders alternative service. This construction is supported by the language of Rule 4(g), which provides:

> If the motion [for alternative service] is granted, the court shall order service of process *by publication, by mail from the clerk of the court, by other means, or by some combination of the above,* provided that the means of notice employed shall be reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action to the extent reasonably possible or practicable.

Utah R. Civ. P. 4(g) (emphasis added). Thus, the court has discretion to order the *type* of process, so long as the process it

chooses meets the constitutional requirement. The determination of whether the constitutional requirement has been met by the type of process, however, is a question of law and we will afford no deference to the trial court's determination as to that question.[3]

Here, Whatley argues that either the affidavit supporting the application for alternative process was false or misleading or that the affidavit on its face does not show sufficient diligence in investigating Whatley's then current address. Accordingly, the *Vijil* standard of review is proper (1) because determining whether an affidavit supporting service is false and determining whether due diligence has been exercised are questions essential to resolving whether a trial court has personal jurisdiction over a defendant, and (2) because we are *not* reviewing whether the trial court should have ordered a certain type of process it decided had met the constitutional requirements. *See Carlson v. Bos,* 740 P.2d 1269, 1277 (Utah 1987) ("The second diligence requirement is one we imply to avoid constitutional infirmities in [the nonresident motorist notice statute]. To satisfy it, plaintiff must establish that a diligent attempt has been made to obtain defendant's current address."); *Liebhardt v. Lawrence,* 40 Utah 243, 254, 120 P. 215, 219 (Utah 1911) (holding that false statement in affidavit "is itself an act of fraud" requiring court to set aside default judgment); *cf. Martin v. Nelson,* 533 P.2d 897, 897 (Utah 1975) (holding that court had no jurisdiction because return of summons was "wittingly or unwittingly falsified"); *Bowen v. Olson,* 122 Utah 66, 70–73, 246 P.2d 602, 604–05 (Utah 1952) (discussing effect of filing fraudulent affidavit in support of alternative service of process).

## ANALYSIS

### I. False or Intentionally Misleading Affidavit

■ Rule 4(g) of the Utah Rules of Civil Procedure provides:

---

3. We also note that *Mori* recognized the correctness standard as the appropriate standard for review of jurisdictional questions. In that case, we implicitly applied a correctness standard when we reviewed the independent argument that the trial court lacked personal jurisdiction of the defendant because he did not have sufficient contacts with the state. *See id.* at 1239–40.

Where the identity or whereabouts of the person to be served are unknown and cannot be ascertained through reasonable diligence ..., the party seeking service of process may file a motion supported by affidavit requesting an order allowing service by publication, by mail, or by some other means. The supporting affidavit shall set forth the efforts made to identify, locate or serve the party to be served, or the circumstances which make it impracticable to serve all of the individual parties. If the motion is granted, the court shall order service of process by publication, by mail from the clerk of the court, by other means, or by some combination of the above, provided that the means of notice employed shall be reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action to the extent reasonably possible or practicable.... The court's order shall be served upon the defendant with the process specified by the court.

Utah R. Civ. P. 4(g). Thus, the rule requires that a plaintiff demonstrate by affidavit two things before alternative service will be granted when a person's identity or address is unknown: (1) the identity or location of the person to be served is unknown, and (2) the identity or location cannot be ascertained through reasonable diligence. It is not enough for the affidavit to aver generally these two facts, but it must also state the specific efforts made to identify, locate, or serve the party. Based upon that affidavit, a court may grant alternative service. However, the alternative service must "be reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action to the extent reasonably possible or practicable." Further, the order must specify the content of the process, which must include a copy of the court's order, and the events completing the service.

■■■ The requirement that the plaintiff submit an affidavit with the appropriate averments has been called the "diligence requirement." *See Carlson v. Bos,* 740 P.2d 1269, 1277 (Utah 1987). Because the Due Process Clause of the United States Constitution requires that "a plaintiff must act diligently and take such steps in attempting to give the defendant actual notice of the proceeding as are reasonably practicable," *id.* at 1275, this diligence requirement "is one we imply to avoid constitutional infirmities," *id.* at 1277.[4] It follows therefore that if a plaintiff falsely avers or intentionally misleads a court to believe that he or she has exercised such diligence when he or she has not done so, the court, although at the time appearing to have jurisdiction, never had jurisdiction because the plaintiff never met the constitutional mandate. For example, in *Liebhardt v. Lawrence,* 40 Utah 243, 120 P. 215 (Utah 1911), a case involving a statutory precursor to Rule 4(g), the supreme court set aside a default judgment against a defendant when, *inter alia,* the plaintiff filed an affidavit, which falsely averred that the plaintiff had no knowledge of the defendant's address or location. *Id.* at 219. The court held that, although the statement in the affidavit may have been technically true, the affiant falsely averred when "he had ready and convenient means of knowledge" but failed to either disclose the means or discover the information he claimed he did not know. *Id.* Hence, the court found that a technically correct but intentionally misleading statement in the affidavit was false. *Id.* In explaining its decision, the court said:

> As frequently stated by the courts, a plaintiff who seeks to avail himself of the statutory mode [or Rule 4(g) ] for a constructive

4. Although *Carlson* interpreted Utah Code Ann. § 41–12–8 (1981) (current version as amended at Utah Code Ann. § 41–12a–505 (1993))—the nonresident or departed resident motorist service statute—the diligence requirement as described in the case was enunciated not as a matter of statutory construction but as a matter of constitutional mandate. *See Carlson v. Bos,* 740 P.2d 1269, 1277 (Utah 1987) ("The second diligence requirement is one we imply to avoid constitutional infirmities in section 41–12–8."). The Utah Supreme Court stated that because of the diligence requirement it had incorporated into the motorist service statute, a "plaintiff is now compelled to exercise the same due diligence to establish the statutory right to use an alternative form of process under the statute as is required by Rule 4(f) [the precursor to Rule 4(g) ]." *Id.* at 1278. Thus, the diligence requirement as explained in *Carlson* applies specifically to the diligence requirement in Rule 4(g).

service of summons must exercise good faith in his representations to the court or judge. A presentation of a willfully false affidavit, for the purpose of obtaining an order for service of the summons by publication, is itself an act of fraud.

*Id.* In an analogous case, where a California police officer "wittingly or unwittingly falsified" the date and place of service on the return of summons, the Utah Supreme Court vacated the judgment against the defendant. *Martin v. Nelson,* 533 P.2d 897, 897 (Utah 1975).

■ Whatley argues that Kaufman filed a "distort[ed] and mislead[ing]" affidavit when he "fail[ed]. to mention [in the affidavit] the California reference and ... specifically stat[ed] that the employees in the Salt Lake office would not permit the constable to personally serve the defendant." We agree. When viewed in its entirety and in context, it is clear that Kaufman's affidavit is intentionally misleading. The constable noted on the summons that Whatley is not. at the Kemper Salt Lake City office but may be at the Long Beach office. However, the affidavit states that "[t]he defendant is employed at Kemper." Although such an averment by itself may appear truthful—Whatley may have been employed by Kemper in Los Angeles— in context, it is clearly a statement made to intentionally mislead. The Kemper address indicated on the summons is a Salt Lake City address. Further, the affidavit states that "plaintiff has attempted to serve the defendant at his place of employment; however, the personnel at Kemper ... would not allow the defendant to be personally served there." Since the only place Bonneville attempted to serve Whatley was at the Salt Lake City office, the only reasonable construction of the previous statement that "Whatley. is employed at Kemper" is that Kaufman is speaking of the Salt Lake City office. Thus, the fair implication of the affidavit is that Whatley works at Kemper in Salt Lake City.

The affidavit also intentionally misleads when it states that the "personnel at Kemper ... would not allow the defendant to be personally served there." The copy of the summons and the return of summons—the return was filed after the trial court's deci-sion—indicate only that when the constable tried to serve Whatley, Whatley was absent because, he was not employed there. It does not state that Whatley was there but his employer would not allow service, although the representations were clearly made to give the court that impression. Later affidavits submitted by Whatley to the trial court indicate that Whatley was not in Utah working for Kemper at the time of attempted service. No evidence to the contrary exists.

Hence, Bonneville's attorney submitted an intentionally misleading affidavit. Based on the statements on the copy of the summons, the summons return, and Whatley's uncontroverted affidavits later submitted to the trial court that directly contradict the representations in the affidavit, it is impossible to conclude that the statements could have been made unintentionally. Because the statements of fact in the affidavit were intentionally misleading, the apparent purpose of the affidavit was to give the trial court a false impression of the facts. Thus, the affidavit was not submitted in good faith and, hence, was a false affidavit. Accordingly, the affidavit upon which the motion for alternative service was granted was defective, and the trial court could not have obtained personal jurisdiction based on alternative service granted pursuant to it.

Bonneville asserts however that because Whatley was working for Kemper in California it would have been reasonable for the court to order the service to the Salt Lake City office of the same company. Even assuming Bonneville's assertion is true, the fact remains that the averments in the affidavit show that Whatley was working at Kemper in Salt Lake City and that he was not served because Kemper prevented him from being served at that office. There is no way to know what the trial court would have done had the affidavit stated the facts as they really were. Accordingly, we reject the argument.

## II. Due Diligence Requirement

■ Even assuming the affidavit was not false, the trial court erred when it decided the plaintiff had met the due diligence requirement. The trial court should have

known at the time of the motion for alternative service that Bonneville had not exercised due diligence. The diligence that one must exercise to satisfy the due diligence requirement has been clearly explained:

> The diligence to be pursued and shown by the affidavit is that which is reasonable under the circumstances and not all possible diligence which may be conceived. Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address or the fact of death of the person on whom service is sought. There have been cases where the plaintiff in an action to quiet title or in a divorce action was not untruthful in setting down details in the affidavit to show diligence; yet like a person who bustles with activity but accomplishes little, makes an imposing recital of nonproductive diligence. Such type of "diligence" when probed may reveal a design to draw attention away from the fact that a further pursuit might result in an unwelcome disclosure of the actual address of the defendant. Due diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so. If the end sought is the address of an out-of-state defendant it encompasses those steps most likely, under the circumstances, to accomplish that result.

*Parker v. Ross*, 117 Utah 417, 427–28, 217 P.2d 373, 379 (Utah 1950) (Wolfe, J., concurring specially); *accord Carlson*, 740 P.2d at 1277 n. 13;[5] *Bowen v. Olson*, 122 Utah 66, 74–75, 246 P.2d 602, 605–06 (Utah 1952); *Weber v. Snyderville W.*, 800 P.2d 316, 318–19 (Utah.Ct.App.1990); *see also Downey*

*State Bank v. Major–Blakeney Corp.*, 545 P.2d 507, 509 (Utah 1976) ("The requirement is that there be exercised reasonable diligence in good faith.").

In this case, the trial court had Kaufman's affidavit and a copy of the summons before it when it granted the motion for alternative service. The copy of the summons clearly stated that Whatley was not at the Kemper Salt Lake office but that whomever the constable had spoken with at that office told him that Whatley may have been working at the Long Beach, California office. Despite the indication on the summons, Kaufman's affidavit did not show that any attempt was made to locate Whatley's address in California.

 On the Rule 60(b) motion, the trial court below apparently concluded, and Bonneville urges us to accept the conclusion, that Bonneville had exercised due diligence because it had contacted all the addresses on the medical payment form. Due diligence requires more than attempting to contact addresses on a single form. Due diligence is not "diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address ... of the person on whom service is sought," and "must be tailored to fit the circumstances of each case." *Parker*, 217 P.2d at 379 (Wolfe, J., concurring specially). In this case, when attempting to serve process at Whatley's place of employment, the employer told the constable that Whatley might be working in the Kemper office in Long Beach, California. If Bonneville had exercised due diligence, it would have at least tried to contact the Long Beach office. The affidavit did not aver such attempts,[6] and therefore did not meet the due diligence requirement.[7]

---

**5.** We note that "[a]lthough *Parker* was based on a statutory, rather than federal constitutional analysis, Justice Wolfe's concurring opinion set[s] forth some general due diligence guidelines that are instructive to plaintiff's attempting to comply" with due diligence requirements. *Carlson*, 740 P.2d at 1277 n. 13.

**6.** In Bonneville's brief, it asserts that "[a]ttempts were made to contact Whatley [at the Long Beach, California office] ... to no avail." A review of the record reveals that no such claim was made to the court below at any time. Fur-

ther, even if Bonneville had made such a claim after the motion had been granted, the fact that Kaufman made no claim in the affidavit for alternative service is dispositive since the trial court would have relied only on that affidavit when it granted the motion.

**7.** Although no party has raised the issue, it should be noted that "[w]hen a judgment, including a default judgment, has been entered by a court of general jurisdiction, the law presumes that jurisdiction exists, and the burden is on the party attacking jurisdiction to prove its absence."

## CONCLUSION

Because the Kaufman affidavit was false and did not demonstrate that Bonneville had exercised due diligence in attempting to serve Whatley in California, the trial court improperly granted the motion for alternative service. The trial court therefore incorrectly denied Whatley's Rule 60(b) motion to quash service and set aside the default judgment.[8] Accordingly, we reverse the trial court's denial of the Rule 60(b) motion, set aside the default judgment, and quash service.

DAVIS, P.J., and BILLINGS, J., concur.

*State Dep't of Soc. Servs. v. Vijil,* 784 P.2d 1130, 1133 (Utah 1989). Whatley clearly met that burden.

8. Because our decision as to this issue is dispositive, we need not consider the other issues raised by Whatley, i.e., whether the service was improper because the mailing certificate failed to indicate that a copy of the court's order allowing alternative service had been sent with the complaint and summons, or whether the default judgment should be set aside because Bonneville failed to notify Whatley that default judgment had been entered.