Joseph W. O'KEEFE, Jr., Petitioner,

v.

**UTAH STATE RETIREMENT BOARD, Respondent.**

No. 970052.

Supreme Court of Utah.

April 10, 1998.

---

Brian R. Florence, Ogden, for petitioner.

Kevin A. Howard, Salt Lake City, for respondent.

Phillip W. Dyer, Salt Lake City, for amicus Utah Public Employees' Association.

ZIMMERMAN, Justice:

We granted certiorari to review a court of appeals decision upholding a decision of the Utah State Retirement Board ("the Board") in which the Board refused to accept retirement contributions from Joseph O'Keefe's employer, Ogden City, for hours O'Keefe worked in excess of forty per week. *See O'Keefe v. Utah State Retirement Bd.*, 929 P.2d 1112 (Ct.App.1996), *cert. granted,* 939 P.2d 683 (Utah 1997). The court of appeals held that under section 49–4–103(1)(c)(i) of the Public Safety Retirement Act ("PSRA" or "Act"), *see* Utah Code Ann. §§ 49–4–101 to –704, work in excess of forty hours per week is "overtime" within the meaning of the Act and therefore cannot be included in compensation for the purpose of determining retirement benefits. We granted certiorari on the question of the statutory definition of overtime. We reject the court of appeals' interpretation of section 49–4–103(1)(c)(i). However, we affirm on alternative grounds.

Because the facts are set forth in detail in the court of appeals' opinion, we recap them here only briefly before turning to the standard of review and our analysis.[1] O'Keefe was a peace officer employed by Ogden City. In 1985, Ogden City began a program under which its peace officers could be required, under certain circumstances, to work more than forty hours per week. In 1989, an agreement was reached under which a total of three additional hours per week in excess of the regularly scheduled forty hours per week could be treated in either of two ways, at the election of the peace officer. The hours in question, termed "gap time," could be taken later as leave and no compensation would be paid, or the officer could be compensated for the gap time at his regular rate and retirement contributions would be paid to the Utah Retirement Systems ("URS") by Ogden City on that compensation. O'Keefe elected to have Ogden City treat his gap time as compensated time, and Ogden City made contributions to URS on those hours.

In 1992, URS determined that gap time contributions were ineligible to be credited toward retirement benefits and refunded those contributions to Ogden City. However, after negotiations between Ogden City and URS, URS agreed to accept gap time contributions conditionally, pending its formulation of a permanent policy.[2] An actuarial study was conducted to determine the effect acceptance of gap time contributions would have on the system. In July of 1994, URS notified O'Keefe of its decision to permanently refuse gap time contributions. It stated that any hours worked in excess of forty per week would be considered overtime and, thus, ineligible for calculating retirement benefits. O'Keefe sought reconsideration by the Board of that URS decision, claiming that URS had to accept the contributions because the gap time was not "overtime" under the relevant statute, section 49–4–103 of the PSRA. The Board conducted a hearing in May of 1995 and sustained URS's action. O'Keefe petitioned for review with the court of appeals, which issued its decision upholding the Board in December of 1996.

The issue before us on certiorari is the definition of "overtime" as that term is used in section 49–4–103 of the PSRA. Because statutes must be interpreted uniform-

---

1. The parties stipulated to the facts submitted to the administrative hearing officer as the basis for the determination of the case. We paraphrase those facts here.

2. O'Keefe believed that a permanent policy had been adopted and that the contributions were being accepted unconditionally. While an estoppel claim based on those facts was brought to the Board and was addressed by the court of appeals, that issue is not before us.

ly, we review the court of appeals' construction of the statute for correctness, according it no deference. *See Zoll & Branch, P.C. v. Asay*, 932 P.2d 592, 593 (Utah 1997); *State v. Pena*, 869 P.2d 932, 937 (Utah 1994).

Under the PSRA, contributions are based on the employee's "compensation" from the employer. If an amount paid to an employee is not within the statutory definition of the term "compensation," that amount cannot be used to calculate the contributions to be made to URS and cannot be used as a basis for determining retirement benefits. *See* Utah Code Ann. §§ 49–4–103, –301, –402. The relevant provision of the PSRA is section 49–4–103, which reads as follows:

49–4–103. Definitions.

As used in this chapter:

(1)(a) "Compensation," "salary," or "wages" means the total amount of payments which are currently includable in gross income made by an employer to an employee covered under the retirement system for services rendered to the employer as base income. Base income shall be determined prior to any salary deductions or reductions for any salary deferral or pretax benefit programs authorized by federal law.

. . . .

(c) "Compensation" does not include:

(i) overtime[.]

According to this language, if the gap time hours worked by O'Keefe are "overtime," they are excluded from the definition of compensation.

■ A fundamental rule of statutory construction is that statutes are to be construed according to their plain language. *See Asay*, 932 P.2d at 594. Only if the language of a statute is ambiguous do we resort to other modes of construction. *See id.* Furthermore, unambiguous language may not be interpreted to contradict its plain meaning. *See id.* A corollary of this rule is that "a statutory term should be interpreted and applied according to its usually accepted meaning, where the ordinary meaning of the term results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction of the express purpose of the statute." *Morton Int'l, Inc. v. Auditing Div.*, 814 P.2d 581, 590 (Utah 1991); *accord Archer v. Board of Lands & Forestry*, 907 P.2d 1142, 1145 (Utah 1995); *Commercial Inv. Corp. v. Siggard*, 936 P.2d 1105, 1111 (Utah Ct.App.1997); *B.L. Key, Inc. v. Utah State Tax Comm'n*, 934 P.2d 1164, 1166 (Utah Ct.App.1997).

The court of appeals, in construing section 49–4–103, implicitly found that the meaning of overtime is ambiguous. For assistance in defining the term it turned to the PSRA as a whole, and more specifically, to the definition of "full-time service" set forth in section 49–4–103(3). The court of appeals reasoned that since full-time service is defined as " '2,080 hours a year,' i.e., forty hours per week," anything in excess of full-time service constitutes overtime. 929 P.2d at 1116 (quoting Utah Code Ann. § 49–4–103(3)). It stated:

We agree with the Board, that the only reasonable construction of the definitions of compensation and full-time service, looking at the PSRA in its entirety, is that work in excess of forty hours per week exceeds full-time and is therefore overtime and cannot be included in compensation in determining retirement benefits. In other words, by clearly defining what is full-time, the PSRA has set a boundary which also defines overtime.

*Id.* We disagree.

■ Reviewing the statutory language, we find the meaning of overtime to be plain and unambiguous and therefore have no need to resort to other methods of construction. In concluding that the definition of full-time service sets a boundary which defines overtime and that any hours worked in excess of forty per week constitute overtime, the court of appeals ignored the usually accepted meaning of the term. As O'Keefe himself acknowledges, the usually accepted meaning of overtime is work in excess of some defined, regularly scheduled work period.[3] This un-

---

**3.** O'Keefe also argues that the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, somehow governs the usually accepted meaning of overtime. He argues that since all members of the PSRA are governed by the overtime pay provisions of the FLSA, all members of the PSRA

derstanding of overtime is well illustrated by its definition in several dictionaries. For example, *Black's Law Dictionary* defines overtime as "after regular working hours; beyond the regular fixed hours." *Black's Law Dictionary* 1105 (6th ed. 1990). *Webster's Third New International Dictionary* defines it as "that in excess of . . . the regular working time." *Webster's Third New International Dictionary* 1611 (1986). Finally, a third dictionary states that overtime is "working time before or after one's regular scheduled working hours." *Random House Webster's Unabridged Dictionary* 1386 (2d ed. 1997). Because we see nothing in this interpretation that would render the statute inoperable or contradict the purpose of the PSRA, we believe that overtime, as used in the PSRA, is properly defined as hours worked in excess of an employee's regularly scheduled work period.

Unlike the court of appeals' decision, our ruling does not result in a determination of a fixed number of hours worked beyond which additional hours constitute overtime. Rather, our ruling necessitates a case-by-case determination of an employee's regularly scheduled work period.[4]

Having concluded that the court of appeals erred in determining that any hours worked in excess of forty per week constitute overtime, we now apply the correct rule to this case. If O'Keefe had a regularly scheduled work period of forty-three hours per week, then the gap time hours would be retirement eligible. However, that is not the case. From the record, we can determine that

O'Keefe has conceded that his regularly scheduled work period was forty hours per week. For example, the brief submitted on appeal by O'Keefe to the Utah State Retirement Board stated, "Petitioner would not argue against the Board's assertion that the members at issue have a regularly scheduled 40 hours tour of duty during a work period." Furthermore, the stipulation of facts submitted to the Board, and upon which its decision was based, states that Ogden City peace officers could be required to work more than forty hours per week "under certain prescribed and agreed upon circumstances." Thus, although the stipulated facts do not expressly state that O'Keefe's regularly scheduled work period was forty hours per week, the uncontroverted record evidence leads to the conclusion that that was his scheduled work period. Therefore, the three hours of gap time at issue constitute overtime and are not compensation for the purposes of the PSRA.

Affirmed on alternative grounds.

HOWE, C.J., and STEWART, DURHAM and RUSSON, JJ., concur in Chief Justice ZIMMERMAN'S opinion.

---

must understand the term "overtime" to be governed by the FLSA's definition and, furthermore, that the drafters of the PSRA must have had the FLSA's definition of overtime in mind when they used the term in the Act.

Although never stated very clearly, O'Keefe's argument is essentially that because under the FLSA a law enforcement officer with a work period of seven days cannot work more than forty-three hours without receiving overtime compensation, *see* 29 C.F.R. § 553.230, for the purposes of the PSRA, only hours worked in excess of forty-three per week constitute overtime. Therefore, his gap time hours do not constitute overtime, and they should be eligible for retirement benefits.

We find little merit in this argument. Although it is certainly true that the FLSA governs

when Ogden City must pay its peace officers overtime compensation, the FLSA does not define overtime for the purposes of the PSRA, nor does it change the usually accepted meaning of the term to hours worked in excess of forty-three per week.

4. This ruling thereby addresses the concerns raised in the amicus brief submitted by the Utah Public Employees Association. Because certain peace officers have a work period of twenty-eight days, in which they are required to work 171 hours, this should be considered their regularly scheduled work period. Therefore, these employees should receive retirement contributions on the full 171 hours, whereas under the court of appeals' decision they would be entitled to receive contributions on only 160 of those 171 hours.