2001 UT App 257

STICHTING MAYFLOWER MOUNTAIN FONDS; Stichting Mayflower Recreational Fonds; and Jordan Investors, Inc., Plaintiffs and Appellants,

v.

JORDANELLE SPECIAL SERVICE DISTRICT, a special service district of Wasatch County, State of Utah, Defendant and Appellee.

No. 990910–CA.

Court of Appeals of Utah.

Sept. 7, 2001.

Rehearing Denied Jan. 28, 2002.

E. Craig Smay, Salt Lake City, for Appellants.

Mark R. Gaylord and Craig H. Howe, Ballard, Spahr, Andrews & Ingersoll, Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and THORNE.

## OPINION

BENCH, Judge:

¶ 1 Plaintiffs (collectively "Investors") appeal the trial court's order dismissing their action because a proper summons had not been served within the thirty-day time period allowed by Utah Code Ann. § 17A–3–229 (1999). We affirm.

## BACKGROUND

¶ 2 Investors are property owners within the boundaries of Defendant Jordanelle Special Improvement District (Jordanelle). In 1999, Jordanelle passed an ordinance levying an assessment against certain properties within its district, including property owned by Investors, to pay for sewage system improvements. The effective date of the ordinance was February 3, 1999. On February 25, 1999, Investors filed a complaint in district court challenging the assessment. On the same day, Investors served a summons (first summons) and copy of the complaint on Jordanelle.

¶ 3 After being served with the first summons, Jordanelle filed a Motion to Quash Summons and Dismiss Action. Jordanelle argued that the first summons should be quashed because it failed "to state either that the complaint is on file with the court or that the complaint will be filed with the court within ten days of service." Utah R. Civ. P. 4(c)(1). Jordanelle also argued that if the court quashed the first summons, it should also dismiss the action because Investors' failure to serve a valid summons within thirty days of the ordinance's effective date rendered the matter incontestable under section 17A–3–229.

¶ 4 Investors responded by arguing that the first summons should not be quashed because it complied with Form 2 of the Utah Rules of Civil Procedure and because inclusion of the assigned case number on the face of the summons put Jordanelle on notice that an action had been commenced. Investors also argued that the action should not be dismissed because section 17A–3–229 "simply establishes a limitation period for commencement of the action," and does not "alter" the Utah Rules of Civil Procedure with respect to the time limits for serving a summons.

¶ 5 In addition to defending the validity of the first summons, Investors served Jordanelle with another summons (second summons) on March 30, 1999. In its reply memorandum on its motion, Jordanelle asked the court to quash the second summons because Jordanelle's copy of the summons was not signed. At oral argument, Investors argued that the second summons was proper because the copy of the summons attached to the sheriff's return of service was signed. After hearing argument on the validity of the first and second summonses, Judge Ray Harding, Sr. quashed both[1] and directed Investors to re-serve Jordanelle in accordance with the Utah Rules of Civil Procedure.

¶ 6 Immediately following the hearing, Investors served Jordanelle with a third summons on April 28, 1999. While disputing the validity of the third summons, Jordanelle responded by renewing its Motion to Dismiss Action With Prejudice on the ground that section 17A–3–229 divested the court of authority to hear the case because a proper summons had not been served within thirty days of the ordinance's effective date. Prior to a hearing on the motion, Investors served a fourth summons on May 26, 1999, which Jordanelle concedes was sufficient but not timely. The Motion to Dismiss was thereafter argued to Judge Lynn Davis, who dismissed the case pursuant to the provisions of section 17A–3–229. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 We must consider whether Judge Davis properly dismissed Investors' complaint under Rule 12(b)(6) of the Utah Rules of Civil Procedure. This presents a question of law that we review for correctness. See *Larson v. Park City Mun. Corp.*, 955 P.2d 343, 345 (Utah 1998). In reviewing Judge Davis's dismissal of the action, we must review his interpretation of section 17A–3–229. Issues of statutory interpretation are questions of law that we review for correctness. See *State v. Fixel*, 945 P.2d 149, 151 (Utah Ct.App.1997). Furthermore, review of the dismissal also requires us to review Judge Harding's decision to quash the

---

1. The record reflects that Investors believe Judge Harding quashed only the first summons. However, the plain language of Judge Harding's order quashed multiple "summonses" and not just one summons. This plain language interpretation is supported by the fact that Judge Harding directed Investors to serve a new summons after hearing arguments on the validity of both the first and second summonses.

first summons.[2] Whether service of process is proper presents a question of law that we review for correctness. *See Bonneville Billing v. Whatley,* 949 P.2d 768, 771 (Utah Ct.App.1997).

## ANALYSIS

¶ 8 This case is governed by section 17A–3–229, which requires that an action challenging an assessment or proceeding in a special improvement district "must be commenced *and* summons must be served ... not later than 30 days after the effective date of the ordinance." *Id.* § 17A–3–229(2) (emphasis added). In accordance with established rules of statutory construction, we rely only on the plain language of section 17A–3–229 unless the statutory language is ambiguous. *See O'Keefe v. Utah State Ret. Bd.,* 956 P.2d 279, 281 (Utah 1998). We find the statutory language to be unambiguous, and neither party argues otherwise. Investors concede in their brief on appeal that the "proper construction of the statute appears to be that it requires filing of the complaint and service of a summons together within thirty (30) days after the ordinance." We agree. The plain language of the statute requires both an action be commenced and a summons be served within thirty days of the ordinance's effective date. The effective date of the ordinance challenged here is February 3, 1999. Investors commenced an action within thirty days by filing a complaint with the district court on February 25, 1999. Investors also served the first summons the same day. Although timely served, we must decide whether the first summons was valid.

¶ 9 Utah currently allows two alternatives for commencing an action. First, a party may commence an action by filing a complaint with the court. *See* Utah R. Civ. P. 3(a)(1). Alternatively, a party may commence an action by serving a summons together with a copy of an unfiled complaint, which complaint must be filed within ten days after service of the summons. *See* Utah R. Civ. P. 3(a)(2), 4(c)(2). To notify the party being served "the precise manner in which

the action is commenced[,]" *Wasatch Livestock Loan Co. v. District Court,* 86 Utah 422, 423, 46 P.2d 399, 399 (1935), Rule 4 of the Utah Rules of Civil Procedure requires that a summons "shall state *either* that the complaint is on file with the court *or* that the complaint will be filed with the court within ten days of service." Utah R. Civ. P. 4(c)(1) (emphasis added).

¶ 10 Despite the unqualified requirements of Rule 4(c)(1), Investors argue that section 17A–3–229 effectively eliminates the option of commencing an action by service of a summons and a copy of the unfiled complaint, thereby making it unnecessary to indicate on the summons how the action was commenced. Jordanelle contends this issue was not preserved, but our review of the record indicates that Investors did preserve the issue by raising it before the trial court. *See Franklin Fin. v. New Empire Dev. Co.,* 659 P.2d 1040, 1045 (Utah 1983) ("For a question to be considered on appeal, the record must clearly show that it was timely presented to the trial court in a manner sufficient to obtain a ruling thereon....").

¶ 11 Although preserved, Investors' argument fails for two reasons. First, application of section 17A–3–229 does not eliminate the option of commencing an action by service of a summons. A party challenging an ordinance like this one has ample time to serve a summons and file a complaint ten days later, and still be within the thirty-day time period allowed by the statute. Because the plain language of section 17A–3–229 does not eliminate either Rule 3 alternative for commencing an action, a plaintiff must provide the party being served with notice of how the action was commenced.

¶ 12 Second, regardless of the practical necessity for indicating how the action was commenced, the plain language of section 17A–3–229 does not provide for a special summons that alters the Rule 4 requirements. A brief survey of the Utah Code shows that the legislature knows how to change the Rule 4 requirements for a sum-

---

**2.** Although Judge Harding also quashed the second summons, analysis of the second, third, and fourth summonses is unnecessary given our in-

terpretation of Utah Code Ann. § 17A–3–229 (1999).

mons if it so desires. *See, e.g.,* Utah Code Ann. § 10–7–70 (Supp.2000) (establishing summons for alleged corporate violation of city ordinance); Utah Code Ann. § 73–4–4 (1989) (establishing summons for water rights action). Without an explicit change by the legislature, the plain language of section 17A–3–229 must be interpreted as requiring a regular summons that complies with Rule 4. *See Berrett v. Purser & Edwards,* 876 P.2d 367, 370 (Utah 1994) ("A cardinal rule of statutory construction is that courts are not to infer substantive terms into the text that are not already there.").

¶ 13 Investors' first summons indisputably did not contain the required statement indicating that the complaint had been filed with the court. *See* Utah R. Civ. P. 4(c)(1). Instead of following the requirements of Rule 4, Investors apparently followed Form 2. *See* Utah R. Civ. P.App. of Forms. Form 2, however, does not contain the required statement indicating either that a complaint is on file or will be filed. *See* Utah R. Civ. P. 4(c)(1). Thus, Investors were not justified in relying upon Form 2, which is "intended for illustration only." Utah R. Civ. P.App. of Forms (Introductory Statement).

¶ 14 The omission of the mandatory statement required by Rule 4 rendered the first summons "fatally defective." *Wasatch Livestock Loan Co.,* 46 P.2d at 399 (interpreting earlier procedural statute that mirrors Rule 4(c)(1)); *see also Locke v. Peterson,* 3 Utah 2d 415, 285 P.2d 1111, 1113 (1955); *Farmers' Banking Co. v. Bullen,* 62 Utah 1, 217 P. 969, 971 (1923). Therefore, Judge Harding properly quashed the first summons.

¶ 15 After quashing the first summons on May 11, 1999, Judge Harding ruled that Investors could serve a new summons under the 120 day provision of Rule 4(b).[3] Judge Harding did not, however, address the fact that the thirty-day time period allowed by section 17A–3–229 expired on March 5, 1999. This statute was the focus of the proceedings before Judge Davis.

¶ 16 Section 17A–3–229 limits a court's authority over the matter as follows:

(2) Any action provided for in Subsection (1) must be commenced *and* summons must be served . . . not later than 30 days after the effective date of the ordinance levying assessments in the special improvement district. . . .

(3) After the expiration of the 30–day period provided in this section:

(a) the special improvement bonds issued or to be issued against the district and the assessments levied in the district shall become *incontestable as to all persons who have not commenced the action provided for in this section;* and

(b) *no suit* to enjoin the issuance or payment of the bonds, the levy, collection, or enforcement of the assessment, or in any other manner attacking or questioning the legality of the bonds or assessments *may be instituted* in this state, *and no court shall have authority to inquire into these matters.*

*Id.* § 17A–3–229(2) to (3) (emphasis added). Jordanelle contends that the final clause of subsection (3)(b), "and no court shall have authority to inquire into these matters," precludes the trial court from inquiring into the matter unless the action has been commenced and a proper summons served within the thirty days. *Id.* § 17A–3–229(3)(b). When read in conjunction with the introductory phrase of subsection (3), "[a]fter the expiration of the 30–day period provided in this section," the last clause of subsection (3)(b) appears to support Jordanelle's argument. *Id.* § 17A–3–229(3)(b).

■ ¶ 17 However, under established rules of statutory construction, "[t]he plain language of a statute is to be read as a whole, and its provisions interpreted in harmony with other provisions in the same statute." *Lyon v. Burton,* 2000 UT 19, ¶ 17, 5 P.3d 616. When read in context of the rest of section 17A–3–229, the last clause of subsection (3)(b) leaves the trial court with some limited authority. The plain language of subsection (3) only requires a party to "commence" or "institute" an action. Utah Code.Ann. § 17A–

---

3. As pointed out by the dissent, Jordanelle agreed that Investors could re-serve the summons *under the provisions of Rule 4.* Despite the position taken by our dissenting colleague, the parties have not raised the issues of waiver or judicial estoppel.

3–229(3)(a) to (b). Interpreting subsection (3) as cutting off all authority even though an action has been timely commenced would go too far because it would render most of the language of subsection (3) superfluous. *See State v. Hunt,* 906 P.2d 311, 312 (Utah 1995) ("[A]ny interpretation which renders parts or words in a statute inoperative or superfluous is to be avoided." (Quotations and citation omitted.)). Therefore, once a party has timely commenced an action, the trial court retains some measure of authority over the matter.

¶ 18 The extent of retained authority, however, is limited by the requirements of subsection (2). Nothing in subsection (3) eliminates the subsection (2) requirement that a summons be served within the allowed thirty days. Accordingly, if an action has been commenced and a summons served within thirty days, section 17A–3–229 gives a trial court the limited authority to consider a motion to amend a defective summons under Rule 4(i) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 4(i). If the trial court grants a motion to amend, the date of the amended summons relates back to the date of the timely served but defective summons, thereby satisfying the timely summons requirement of subsection (2). *See Meyers v. Interwest Corp.,* 632 P.2d 879, 881–82 (Utah 1981) (holding that summons may be amended even after statute of limitations has expired, and the date of the amended summons relates back to the date of the initial summons).

¶ 19 Investors commenced an action by filing a complaint within the thirty days allowed by the statute. Although defective, the first summons was also timely served. Therefore, Judge Harding had authority to consider a motion to amend the defective first summons. Investors, however, failed to file a motion to amend even though they were clearly on notice that such a motion may be necessary. In its memorandum in support of its Motion to Quash Summons and Dismiss Action, Jordanelle argued that if the court were to quash the first summons, the action should be dismissed because it would be impossible for Investors to serve a proper summons within the thirty days allowed by

section 17A–3–229(2). Investors could have easily responded with a motion to amend, but chose instead to rely upon the validity of the first summons.

¶ 20 As a result, the only motion argued to Judge Harding was Jordanelle's motion to quash the summons. Once Judge Harding quashed the first summons, as he had to do under controlling case law, Investors were left with only untimely served summonses. Without a timely served summons in existence, the requirements of section 17A–3–229(2) could not be met, and Judge Davis had no choice but to dismiss the action.

## CONCLUSION

¶ 21 Although timely, Investors' first summons was fatally defective because it did not comply with Rule 4(c)(1) by stating whether a complaint was filed or would be filed within ten days. Although the trial court retained the authority to allow an amendment of the first summons, Investors did not request the court to do so. Therefore, Judge Harding properly quashed the first summons. After the first summons was quashed, the thirty-day requirement of section 17A–3–229(2) could not be satisfied. Therefore, Judge Davis properly dismissed the action.

¶ 22 Accordingly, we affirm.

¶ 23 I CONCUR: JUDITH M. BILLINGS, Judge.

THORNE, Judge (dissenting in the result):

¶ 24 I write separately to dissent not from the principles outlined by the majority, nor their application to this case, but because I believe that a threshold matter should be resolved before these principles are addressed. The question is whether Jordanelle waived the right to further object to defects in the service of process after representing to the trial court that no prejudice would result to Stichting if the court were to quash the summons?

¶ 25 I would answer this question in the affirmative. Judicial estoppel is a court created doctrine that "focuses on the relationship between [a] litigant and the judicial

system." 28 Am.Jur.2d *Estoppel and Waiver* § 35 (2000). "This doctrine prevents parties from 'playing "fast and loose" with the court or blowing "hot and cold" during the course of litigation.'" *Roxas v. Marcos,* 89 Hawai'i 91, 969 P.2d 1209, 1242 (1998) (citation omitted). Further, judicial estoppel "seeks to prevent a litigant from asserting a position [that is] inconsistent, conflicts with, or is contrary to one that [he or] she has previously asserted in the same or in a previous proceeding." 28 Am.Jur.2d *Estoppel and Waiver* § 74; *see also Salt Lake City v. Silver Fork Pipeline Corp.,* 913 P.2d 731, 734 (Utah 1996) (" '[A] person may not, to the prejudice of another person deny any position taken in a prior judicial proceeding between the same person ... involving the same subject-matter, if such prior position was successfully maintained.' " (Citation omitted.)).

¶ 26 Jordanelle, in its written motion, initially asked the court to quash the service and dismiss the case. However, during the subsequent motion hearing, Jordanelle represented to the trial court that,

> The rights and duties of Mr. Smay and his client [are] to properly serve the summons and comply with the rule. The law is that if they don't do that it's to be rendered fatal and defective.
>
> It doesn't mean that Mr. Smay can't re[-]serve the summons.
>
> . . . .
>
> We're not saying that Mr. Smay's claims still won't be heard. They may be heard, but he has to follow procedure.
>
> . . . .
>
> If he wants, he can come out and serve Jordanelle once again. He still is even within the 120 days. Nothing has been harmed by it, but we ought to be entitled to, and he ought to be required to follow the rules.

¶ 27 Through this representation, Jordanelle's attorney, either knowingly or mistakenly, lulled the trial judge into viewing the matter as a minor procedural wrinkle that could be resolved with a simple instruction to re-serve. This representation is, I believe, the equivalent of a waiver of all procedural defects regarding the service of process in this case. After such a representation has been made, a trial court should be entitled to rely upon counsel's representation and resolve what was represented to be a minor procedural matter by quashing service and instructing Stichting to re-serve the process, as agreed by counsel on the record.

¶ 28 Had Jordanelle's attorney instead, clearly represented to the court that granting the motion to quash would be determinative, the trial court would have had a reason to treat the matter differently. Instead of resolving the matter quickly, upon what is best termed an agreement by counsel to re-serve the complaint, the trial court might well have inquired into the substance of the issue, including asking whether the problem could have been remedied by a motion to amend the service,[1] or whether Jordanelle waived any procedural defects. The court would also have had the opportunity to consider other arguments that might have been raised by opposing counsel.[2] However, in reliance upon Jordanelle's representation, the trial court ordered the summons quashed and instructed Stichting to serve a properly drafted summons upon Jordanelle.

¶ 29 Then, in the following round of motions, Jordanelle adopted a position wholly inconsistent with its prior position, arguing that, as a result of the summons being quashed, Stichting had failed to timely serve the summons and was now barred. Jordanelle's adoption of these contrary positions is clearly inapposite and constitutes Jordanelle playing " 'fast and loose' with the court." *Marcos,* 969 P.2d at 1242.

---

1. As suggested by the majority opinion.

2. Given the workload of district judges, it would be very unusual for a trial judge to permit argument about a procedural matter that is easily remedied. Knowing the propensity of most trial judges to want to spend time on substantive disagreements between counsel, and not become mired in technical irregularities, opposing counsel may have been unwilling to force the issue when opposing counsel has represented in open court that the matter is both minor and inconsequential.

¶ 30 I believe that it is inadvisable for this court to countenance Jordanelle's misleading behavior.[3] I also believe that our decision may have untoward consequences impacting the future utilization of judicial resources. Following this decision, trial judges may become reluctant to rely upon trial counsel's representations. Instead, trial courts may be forced to scrutinize every representation of counsel for any possible unforeseen consequence, regardless of assurances to the contrary made by counsel, thereby unnecessarily expending both judicial and litigant resources searching for hidden consequences to virtually every action in court. This consequence can be avoided if we simply require counsel to either stand behind their representations to the court, or, in the event of a mistake, notify opposing counsel and the court so that the matter might be revisited.

¶ 31 For these reasons, I would conclude that Jordanelle waived any objection to the procedural defect contained in Stichting's summons, and reverse Judge Davis's dismissal with prejudice.

---

**3.** I view with some interest the fact that Jordanelle argued to Judge Harding, Sr. that no prejudice would result from quashing the summons, and then argued to Judge Lynn Davis, who did not have knowledge of Judge Harding's intent, that because the summons had been quashed, Stichting failed to serve the summons within the statutory period; therefore, Stichting's complaint should be dismissed with prejudice.